## CLARK *v.* THE PEOPLE.

The *legislature* have power under the 15th § of the 4th article of the constitution of this state to *direct* the mode of appointment of *justices of the peace* for *cities,* and what is held to the contrary in the case of *The People* v. *Kane,* 23 *Wendell,* 414, is overruled.

ERROR from the Supreme Court. In July term, 1840, the attorney-general filed an information in the nature of a *quo warranto* against Thaddeus Clark, charging him with having on the first day of April, 1839, *usurped* the office of a *justice of the peace* of the fifth ward of the city of *Rochester,* and from thence until the filing of the information had *unlawfully* held and exercised the said office. The defendant pleaded, setting forth his appointment to the office by the common council of Rochester on the first day of March, 1839, in pursuance of the twelfth section of the act incorporating that city. *See Statutes of* 1834, *p.* 286. To this plea the attorney-general *demurred,* and the defendant joined in demurrer. The supreme court sustained the demurrer and rendered judgment for the people. No formal opinion was delivered, but the case was assumed to come within the reasons of the decision of the case of *The People* v. *Kane,* 23 *Wendell,* 414. The defendant sued out a writ of error. The cause was argued here by:

*M. T. Reynolds,* for the plaintiff in error.

*J. Van Buren* and *Willis Hall,* (Attorney-General,) for the people.

*Points submitted and argued on the part of the plaintiff in error:*

I. The constitution does provide for the appointment of justices of the peace in cities. *Constitution, art.* 4, § 7 *and* 14.

1841.

Clark
v.
The People.

II. The act of 1823 recognizes the first point, and adopts the principle. *Stat. of* 1823, *p.* 63, § 8.

III. The act of 1834, providing for the appointment of justices for the city of Rochester, is constitutional and valid. *Stat. of* 1834, *p.* 286, § 12.

*Points submitted and argued on the part of the people.*

The provision contained in the charter of the city of Rochester, which authorizes the common council of that city to appoint city justices, is repugnant to the constitution, and void.

I. The power of the legislature to direct by law the manner of appointing officers, is restricted to two classes of cases: 1. Officers whose appointment is not provided for by the constitution. 2. Officers whose offices have been created since the adoption of the constitution; *provided* the office is not a judicial office. *Constitution, art.* 4, § 15.   1 *R. S. p.* 43.

II. The office of city justice comes under neither of these classes.   1. It is a *judicial office*, and the manner of appointment provided for by art. 4, § 7, of the constitution. *The People* v. *Kane*, 23 *Wend.* 414.   2. It is not a new office, created since the adoption of the constitution. *Sess. Laws* 1805, *ch.* 83, § 5, (4 *Web. ed. p.* 185.)   *Sess. Laws* 1823, *ch.* 70, § 8.

After advisement the following opinions were delivered :

*By the* CHANCELLOR. The question presented by the writ of error in this case is, whether the twelfth section of the act to incorporate the city of *Rochester*, providing for the appointment of justices of the peace in that city by the common council is unconstitutional and void. *See Statutes of* 1834, *p.* 286. And this depends upon the true construction of the seventh section of the fourth article of the constitution as originally adopted, when taken in connection with the fourteenth and fifteenth sections of the same article. The case of the *People ex rel. the Attorney-Gene-*

*ral* v. *Kane,* 23 *Wend.* 414, was rightly decided, without
reference to the constitutional question upon which that
decision was placed by the supreme court.   For if the act
of April, 1826, which, by mistake, the reporter has stated
to have been passed ten years later, was of itself unconsti-
tutional in reference to the mode of appointing police jus-
tices, the Revised Statutes virtually repealed the provision
in that act as to the mode of appointing such justices, if
the provision in the act of 1826, was any thing more than
the power of selecting justices already appointed by the
governor and senate.

The act of 1834, however, under which the plaintiff in
error in this case was appointed, presents the constitutional
question directly for decision, for being subsequent to the
Revised Statutes, if the provision for the appointment of
the justices in Rochester by the common council is not un-
constitutional, it repealed the provisions of the Revised
Statutes relative to the appointment of justices in cities to
this extent.   The same remark may also be made in refe-
rence to the act for the incorporation of the city of *Utica,*
the fifth section of which act gives the election of jus-
tices, to the people of the several wards of the city.   *Sta-*
*tutes of* 1832, *p.* 18.

The section of the constitution under which this ques-
tion arises, as it was originally adopted, read as follows:
" The governor shall nominate, by message in writing, and
with the consent of the senate, shall appoint, all judicial
officers, except justices of the peace, who shall be appoint-
ed in manner following," &c.; the residue of the section
going on to provide for the appointment of justices of the
peace *in towns* only.   This was followed by two other sec-
tions in the same article: the one providing for the ap-
pointment of the special justices and the assistant justices
in the city of New-York; and the other directing that all
officers theretofore elective by the people, should continue
to be elected; and that all other officers, whose appoint-
ment was not otherwise provided for by the constitution,

Clark
*v.*
The People.

and all officers whose offices might thereafter be created by law, should be elected by the people or appointed as might by law be directed.   The question, therefore, is, whether justices of the peace *in cities* other than those in the city of New-York, who are mentioned in the fourteenth section, must be appointed under the seventh section as judicial officers, and not as justices of the peace within the meaning and intent of the exception, or in the manner authorized by the fifteenth section.   One mode of construing this section is, to take the constitution as we find it, without reference to the manner in which its different parts were proposed and adopted; and another is, to look at the proceedings of the convention, and endeavor thereby to discover the probable intention of the framers of the constitution as we now find it.   In either case we must also look at the actual state of things which existed when the constitution was framed and adopted.

Previous to March, 1818, the number of justices of the peace in each county was unlimited, and a general commission of the peace issued, from time to time, for each county, in which commission were included the names of all the justices of the peace who were appointed by the governor and council for the county, without reference to the location of such justices within a city or within a town, provided they lived within the county.   In this commission was generally included the names of the county judges, giving to them a distinct appointment as justices of the peace, in addition to the office of judge which they held under the commission of the *pleas*.   In addition to this the mayors and aldermen of all the cities were *ex officio* justices of the peace, and authorized to act as such in criminal matters; and in some cities they were authorized to try civil suits as *justices*, EX OFFICIO.   The act of March, 1818, to limit the number of judges and justices, prohibited the council of appointment from commissioning more than four justices in any *town*, in addition to those who were also appointed judges of the common pleas; but left the number to be appointed for a

*city* within the bounds of the county, unlimited. Neither did this act interfere with the mayors and aldermen of cities as *ex officio justices of the peace.* There must, therefore, have been many justices of the peace in the cities of Troy, Albany, Schenectady, and Hudson, at the time of the adoption of the new constitution, besides the special justices of Albany and Hudson. Indeed, it was stated in the report of hte secretary of state to the legislature, in January, 1823, (*Assembly Journal of* 1823, *p.* 92,) that there were then sixteen justices in cities other than the city of New-York, whose appointments, by the new constitution, were to be provided for by law. This, of course, did not include the aldermen, whose office by the constitution was elective. In reference to this state of things, the seventh section of the fourth article of the constitution, in connection with the fourteenth and fifteenth sections, might, without much difficulty, be construed thus: The governor shall nominate by message in writing, and with the consent of the senate shall appoint all judicial officers, except justices of the peace, who shall be appointed in the manner following, that is to say, the county judges and the supervisors shall appoint them for the several towns, in the manner prescribed in this section: those in the city of New-York, except the justices of the marine court, in the manner prescribed in the fourteenth section, and all others in the manner which may be authorized by the legislature, under the provisions of the fifteenth section. I confess I do not see why this construction is not as natural as that adopted by the supreme court, who are obliged to add the words, *in towns,* after the general exception of justices of the peace, in order to take justices of the peace *in cities* out of this general exception and bring them within the unexcepted class of judicial officers, whose appointment was provided for by the previous clause of this seventh section. That this was the construction put upon it by Governor Yates, is evident from his first message, in which he mentions *justices in cities* as among the number of officers for whose appoint-

ment no constitutional provision existed, other than the power delegated to the legislature by the fifteenth section, to provide for the appointment by law. *See Senate Journal of 1823, p. 7.* The act of March 21st, 1823, providing for the appointment of *justices in cities*, &c., may also be considered as a cotemporaneous legislative construction, in accordance with this view of the subject. It may not be unimportant to add, that the revisers have given the same construction to the constitution, in their second edition of the Revised Statutes, which was published under their personal supervision: especially as one of them was a member of the convention, and himself framed the provision which was originally appended to this seventh section, relative to the appointment of justices of the peace in towns. The revisers have printed in italics the part of this seventh section which they suppose to have been abrogated by the subsequent amendment of 1826, relative to the appointment of justices of the peace *in towns*, leaving the exception as to justices of the peace, general. 1 *R. S.* 42, 2*d* ed., *note.*

If we look into the proceedings of the convention, for the purpose of ascertaining the probable intentions of that body in relation to the exception of all justices of the peace from the clause giving the appointment of other judicial officers to the general appointing power, I think the construction I am disposed to give to these provisions will be still more apparent. The committee on the appointing power, of which the late president, *Van Buren,* was chairman, originally reported this seventh section substantially as it now stands, after taking off what is italicised by the revisers in their second edition of the statutes, giving to the governor and senate the appointment of all judicial officers except justices of the peace. Two other sections then intervened, and after those a section providing for the election of justices of the peace for each town, not exceeding four. Then came a provision for the appointment of officers in the city of New-York, which was subsequently

materially changed, and finally converted into the present
fourteenth section, which was followed by a general pro-
vision for the election and appointment of all other officers
as the legislature should by law direct, substantially as it
now appears in the fifteenth section.  *Carter & Stone's N.
Y. Conv.* 160.   If that mode of electing justices in towns
had been adopted, it will be seen that the constitution
would have been substantially as the amendment of 1826
has left it,(upon the supposition that the expurgation of the
revisers is correct,) that is, all judicial officers except jus-
tices of the peace would have been appointed by the go-
vernor and senate, under Mr. Van Buren's second section,
which is now the seventh; justices of the peace in towns
would have been elected under his fifth section, now re-
stored by the amendment of 1826; and all other justices
of the peace, except those in towns, and those in New-
York provided for in the fourteenth section, would have
been left to be appointed as the legislature should by law
direct, under his seventh section, which is now the fif-
teenth.   But the convention having refused to adopt the
section providing for the *election* of justices of the peace
in towns, Mr. Van Buren proposed a substitute to be ap-
pended to the end of his second section, providing for the
appointment of all justices of the peace for the counties,
which would have included justices in cities as well as in
towns, which, if adopted, would have made the section
perfectly intelligible, as the provision succeeding the
words " who shall be appointed in manner following," &c.,
would have been as broad as the exception: to wit, *all jus-
tices of the peace.   N. Y. Conv.* 322.   This proposition
was voted down, however; and another equally broad
being subsequently proposed by him, Mr. *Duer* offered an
amendment, which finally prevailed, striking out all Mr.
Van Buren's proposition after the word " following," and
substituting a mode of appointing the justices in towns,
which was eventually made a part of the new constitution,
after having been altered in its phraseology by Judge

Buel. *N. Y. Conv.* 383, 396. In the contest which was carried on with much spirit in the convention, in relation to the mode of *electing* or *appointing* justices, and in adopting Mr. Duer's amendment, the convention appear to have lost sight of the fact that Mr. Van Buren's amendment provided for the appointment of *all* justices, as well in the *cities* as in the *towns*, while Mr. Duer's amendment to it only provided for the *towns*, and therefore made the different parts of the amendment incongruous. I think the debates show, however, that it was intended to leave the justices of the peace in *cities* to be provided for by the legislature under the fifteenth section, as both parties appeared to be anxious to take the appointment of the justices of the peace away from the general appointing power, the governor and senate at Albany.

Courts ought not, except in cases admitting of no reasonable doubt, to take upon them to say that the legislature has exceeded its power, and violated the constitution, especially where the legislative construction has been given to the constitution by those who framed its provisions, and cotemporaneously with its adoption. In this case, therefore, I cannot say that the provision in the charter of the city of Rochester, providing for the appointment of the justices by the common council, was unconstitutional and void. On the contrary, I think the legislative construction of the provision of the constitution in question, is most in accordance with the probable intention of the framers of that instrument.

I must therefore vote to sustain the law, and to reverse the decision of the supreme court declaring it unconstitutional.

By *Senator* Dixon. The 12th section of the charter of the city of Rochester, requires the common council of that city to appoint a justice of the peace for each ward therein; and, agreeably to that direction, the plaintiff in error was duly appointed a justice of the peace for the fifth ward.

This appointment is admitted to be good, unless it be repugnant to the constitution.    It is supposed to be a violation of the 7th section of the 4th article of that instrument, which provides that the governor and senate shall appoint all judicial officers, *except justices of the peace.*    The section then proceeds to prescribe the manner in which a certain class of *justices of the peace,* to wit, those *in towns,* should be appointed.    This mode was by nomination, or concurrent resolution of the boards of supervisors and judges of the county courts of the several counties of the state, with an appeal to the governor in cases of disagreement; but by an amendment of the constitution, was afterwards changed to an election of four justices for each of the towns in the state.    Neither of these provisions were ever supposed to embrace cities.    Cities are not included in terms, nor are the provisions applicable to, or practicable in any city in the state.    We must then look somewhere else for a mode of appointing justices of the peace for cities.    The exception of justices of the peace from appointment by the governor and senate, is general in its terms, and must be universal in its application, and embraces all and every justice of the peace, whether in city or town.    The latter class is provided for by this section, and is now elective; the former, or justices for cities are by this section excluded from appointment by the governor, and no other mode is, in this section, provided for their appointment.

There is, in our cities, a variety of magistrates included under the general denomination of justices: as, special justices, assistant justices, marine justices, police justices, and justices of the justices court, besides those who have the ordinary jurisdiction of justices of the peace in the country. Two of these classes for the city of New-York, are provided for by the 14th section of the same article which directs that special justices, and assistant justices, in the city of New-York, shall be appointed by the common council of said city.    There still remain four classes of city justi-

*1841.*

Clark
*v.*
The People.

ces unprovided for by either of these sections. This may be a *casus omissus* by the convention. On this subject the framers of the constitution evidently had their eye chiefly upon the country, and when we notice the phraseology in the 7th section, " *except justices of the peace who shall be appointed in manner following,*" *&c.*, it seems probable that the convention may have thought at the time, that they were making the provision as broad as the exception, and that they were providing for the appointment of all justices of the peace; or rather that this class of officers for cities, was not in their minds. But the omission is, nevertheless, too palpable to be disregarded, and cannot be supplied without manifest violence to the language. If we were at liberty to interpolate, and instead of " except justices of the peace who shall be appointed," &c., read " except justices of the peace *in the country,*" or " *in the towns,*" who shall be " appointed," &c., we should curtail the exception to the limits of the provision which follows. But this would be exercising a freedom, which I conceive courts are not authorized to take with the organic law of the land. Nor can we read the section as equivalent to this: " except," *such* " justices of the peace" *as* " shall be appointed in manner following," &c., without violating just rules of construction, and charging the constitution with saying one thing, and meaning quite a different thing. I say then, that the 7th and 14th sections leave the appointment of four classes of city justices unprovided for; whether intentionally or accidentally, it is not essential to determine.

Then follows the 15th section which provides that " all other officers, whose appointment is not provided for by this constitution, and all officers whose offices may be hereafter created by law, shall be elected by the people, or appointed as may by law be directed." This is a drag net collecting and securing all shreds and fragments, which, by accident or otherwise, may have escaped in the construction of the edifice. By it, the constitution threw upon the legislatures which were to follow it, the duty among other

things, of prescribing the mode of appointment of *all jus-* *tices of the peace* for cities, except such as are provided for by the 14th section. It follows then, that it was competent for the legislature to authorize the common council of the city of Rochester to appoint the plaintiff in error a justice of the peace.

I am aware that the reasoning of the supreme court in *The People* v. *Kane,* 23 *Wend.* 414, leads to a different conclusion. With great respect, it appears to me that the learned judge in this case, misquotes the section of the constitution in question, and misconstruction necessarily follows. He adds the words " in the several towns," which are not in the constitution. This makes the exception, which in terms is unlimited, and which embraces every justice of the peace in the state, partial and qualified, embracing those in the towns only. The judgment of the court was in that case, unquestionably right, notwithstanding. Kane was appointed to office under the law of 1826, which was inoperative, not because it was in derogation of the constitution, but because it was repealed by the law of 1830, which prescribed a different manner of appointment. *Statutes of* 1826, *p.* 193; 1 *R. S.* 107, § 9.

I think the judgment of the supreme court should be *reversed.*

By *Senator* ELY. The question involved in the consideration of this cause is, whether the legislature has the constitutional right to direct the mode in which justices in cities shall be appointed ?

The seventh section of the fourth article of the constitution provides, that " the governor shall nominate, and with the consent of the senate, shall appoint all judicial officers, except justices of the peace." The remaining part of that section relates to the mode of appointing justices of the peace in the several towns, and has, by an amendment of the constitution, been abrogated. Hence it follows, that justices of the peace, although they may be judicial offi-

VOL. XXVI. 77

*Margin:* 1841. Clark *v.* The People.

cers, are not to be appointed by the governor and senate under that clause of the constitution.

Besides justices of the peace in the several *towns*, there are justices in the *cities*, denominated police justices, special justices, assistant justices, justices of the marine court, and justices of the justices court—six classes of justices, which were known and existed at the time the new constitution was adopted. It is not to be supposed that the convention, which framed the constitution, composed of men of the first distinction, representing every portion of the state, the *cities* as well as the *country*, would have suffered the appointment of so numerous and important a class of officers to pass unprovided for—and, indeed, they did not. The seventh section, which was afterwards amended, provided for the appointment of justices of the peace in the several *towns*; the fourteenth section provides for the appointment of the special justices, and the assistant justices of the *city of New-York*; and the next succeeding section provides for the appointment or election of every officer then existing, and not otherwise provided for, and for the election or appointment of all officers, whose offices might thereafter be created by law. This construction of the constitution gives to the governor and senate the power of appointing *all judicial officers*, except justices of the peace; to the common council of the city of New-York the power of appointing special justices and assistant justices in that city; to the people the power of electing justices of the peace in the several towns; and to the legislature the power to direct by law the election or appointment of all officers not enumerated in that fundamental rule of action, and also of all officers whose offices might thereafter be created by law. This interpretation of the constitution makes that instrument plain, intelligible, and consistent, well worthy of the high character which its framers sustained for patriotism and superior wisdom. To my mind, it is very evident, that the exception in favor of justices of the peace is general, not limited to the town

justices alone, but embraces every description of justices
of the peace.   This is the plain and literal meaning of the
language of the constitution, from which we should never
depart, unless there be strong evidence that the meaning
of those who framed the instrument, was different from
that which its language imports.   Besides, there is much
collateral evidence to show that it was not the design of
the convention to give to the governor and senate the
power of appointing any class of justices.   Gov. Yates,
in his message to the legislature in 1823, the *first* legisla-
ture after the adoption of the constitution, in directing
their attention to the passing of such laws, as had become
necessary under the existing constitution, uses the follow-
ing language: " There are at present, a very considerable
number of officers, for whose appointment no constitution-
al provision exists, other than a general power delegated
to the legislature, to regulate the manner of making such
appointments, and to limit their duration.   Among these
are the offices of surrogate, auctioneer, commissioner to
take acknowledgment of deeds, *justices in cities*, and some
others not deemed necessary here to enumerate."   This
opinion of the chief magistrate of the state, should have
great weight, in determining the sense in which the lan-
guage of the constitution should be understood.   But this
is not all: we have also the opinions of members of the
convention, in the published debates of that body, which go
far in corroboration of the views expressed by the executive.
When the section relative to officers, whose appointment
was not provided for by the constitution, was under con-
sideration, Mr. *Jay* said, " A very large number of offices
had by this section, been left to the disposal of the legisla-
ture and were to be filled, in such manner, as that body
might from time to time direct.   He believed the whole
number of appointments, for which no provision had been
made, and which it had been decided to throw into the
hands of the legislature, amounted to two or three thou-
sand."   Mr. *Munro* observed that " it appeared that about

three thousand offices had been left at the disposal of the legislature. Had he been aware of the extent of the appointing power, for the exercise of which no provision had been made, he should on former occasions have voted differently." Further quotations from these debates are unnecessary. I have seen nothing in them in relation to *justices in cities*, other than special and assistant justices in the city of New-York; but there is abundant evidence, that a very numerous class of officers was not directly provided for, and it is reasonable to suppose that among them were *justices in cities*.

The constitution in express terms denies to the governor and senate the power of appointing the most important class of justices of the peace. To confer upon the highest appointing power of the state, the power to appoint the minor officers, while the power to appoint the higher and more important officers of the same class is withheld from them, is inconsistent with the harmony which pervades every part of the constitution. Believing this to be the obvious meaning of the constitution, I have no hesitation in saying, that the legislature had power, when it granted a city charter to Rochester, to declare the mode in which the justices of that city should be appointed, and whatever that mode might be, whether by the governor and senate, or by the common council or by the people, that by complying with the provisions of the law the appointment becomes valid and constitutional.

In the case of *The People* v. *Kane*, which is submitted as part of the argument, in the discussion of this case, the decision of the supreme court was correct, but not for the reason assigned by the judge, that the law of 1826 was unconstitutional and void; but because it was repealed in 1830. Kane had been appointed in 1838 to the office of a police justice in the city of Albany contrary to law, or rather without law, and the case might have been decided without a constitutional argument on a law, which had been solemnly repealed. The governor and senate

have power to appoint a police justice in the city of Alba- 1841.
ny, not by the seventh section of the fourth article of the
constitution, but by authority of statute law; and the au- Peck
thority for the legislature to pass such law, is found in the *v.*
fifteenth section of that article. The court in that case Young.
came to a right conclusion, but for a wrong reason.

In the case before us I shall vote for a *reversal* of the
judgment of the supreme court.

On the question being put, *Shall this judgment be re-
versed?* All the members of the court present at the argu-
ment of the cause, except *Senators* HUNTER and PAIGE,
voted in the *affirmative;* the two named members voted in
the *negative.* Whereupon the judgment of the supreme
court was REVERSED.