Evans v. Job.

O. M. EVANS, APPELLANT, v. J. H. JOB et als., RESPONDENTS.

ACT FOR REMOVAL OF COUNTY SEAT OF HUMBOLDT COUNTY NOT UNCONSTITUTIONAL. The act of 1873 to remove the county seat of Humboldt County from Unionville to Winnemucca (Stats. 1873, 59) is not in violation of sections 20 and 21 of article IV of the constitution.

CONSTRUCTION OF CONSTITUTION, ART. IV, SECS. 20 AND 21. Sections 20 and 21 of article IV of the constitution were intended to prohibit the legislature from passing any local or special law in any of the cases enumerated in section 20 and in all other cases where a general law would be applicable—that is, adapted to the wants of the people, suitable to the just purposes of legislation or to effect the object sought to be accomplished.

CONSTITUTIONAL PROHIBITION AGAINST LOCAL AND SPECIAL LEGISLATION. The constitutional provisions prohibiting local and special legislation (Const. Art. IV, Secs. 20 and 21) recognize the fact that cases would arise in the ordinary course of legislation requiring local or special laws to be passed—cases where a general law might be applicable to the general subject but not applicable to the particular case.

WHEN GENERAL LAWS SHOULD BE DEEMED "APPLICABLE." A general law should always be construed to be "applicable" in the constitutional sense, where the entire people of the State have an interest in the subject, such as regulating interest, the statutes of frauds and limitations, etc.; but where only a portion of the people are affected, as in locating a county seat, it will depend upon the facts and circumstances of each particular case whether such a law would be applicable.

PRESUMPTION OF CONSTITUTIONALITY OF LOCAL OR SPECIAL LAW. Where a local or special law has been passed in reference to a matter affecting a portion only of the people, it will be presumed to be valid until facts are presented showing beyond any reasonable doubt that a general law is applicable.

PRESUMPTION IN FAVOR OF SPECIAL AS AGAINST GENERAL STATUTE. The mere fact that a general law has been passed providing for the removal of county seats is not proof that it is applicable to a particular case; and if a special act be passed for the particular case, the presumption of the applicability of the general law is overcome by the presumption, in favor of the special act, that the general act was not applicable in that case.

STATUTE GOOD IN PART AND BAD IN PART.  If, when an unconstitutional portion of a statute is stricken out, that which remains is complete in itself and capable of being executed wholly independent of that which was rejected, it must be sustained.

MEANING OF WORD "WEEK."  The word "week" in the provision of the act of 1873 for the removal of the county seat of Humboldt County that all the offices shall be removed to Winnemucca " on the week next preceding May 1, 1873" (Stats. 1873, 59, Sec. 2), does not mean the week ending at 12 o'clock on Saturday night but the seven days prior to May 1, 1873.

PLEADING OF CONCLUSION OF LAW—NO NEED OF DENIAL.  Where a complaint for an injunction to prevent the removal of a county seat in accordance with a special statute (Stats. 1873, 59) alleged that "said act is a special law in a case where a general law of uniform operation throughout the State exists and can be made applicable": *Held,* that such allegation stated a mere conclusion of law and defendant was not required to answer it.

DOCTRINE OF STARE DECISIS.  It is an almost universal rule in construing statutes and constitutions to adhere to former decisions.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

This was an action for an injunction to prevent J. H. Job, Samuel Bonnifield, Christ. Lark, C. A. Kyle, Samuel King, James Mather and Thomas V. Julian, being clerk, recorder, treasurer, assessor, sheriff, surveyor and district attorney of Humboldt County, respectively, from removing their offices from Unionville to Winnemucca.  The plaintiff alleged himself to be a citizen, resident, tax payer and real estate owner of Unionville and that the proposed removal of the county offices would damage, retard and impair public business and inconvenience and damage the plaintiff and other citizens.  He also alleged that the act of February 17, 1873 (Stats. 1873, 59), under which defendants threatened to act, was unconstitutional for the reasons that it was a special law in a case where a general law of uniform operation throughout the State existed and could be made applicable, that it was a special law regulating county business, that it required the removal of the offices to a place which was not the county seat, and that it was void for uncertainty.

An injunction having been denied, the plaintiff appealed from the order.

*Robt. M. Clarke,* for Appellant.

I.    There is no remedy but injunction, and injunction is the remedy.    The proceeding is not to redress but to prevent an injury.    *Thomas* v. *Com. Clay County,* 5 Indiana, 4; *Hess* v. *Pegg,* 7 Nev. 20; *Sherman* v. *Clark,* 4 Nev. 145.

II.    Sections 3 and 4 of the act attempt in a special and exceptional manner to regulate "county business," which is expressly inhibited by the constitution. Art. IV, Sec. 20, Sub. 9.    That an act directing the removal of the personal property and the sale of the real property of a particular county and providing for the renting, building or purchase of rooms or offices for county officers of a particular county in any exceptional manner is a local and special law regulating county business, is too plain for argument.    Stats. 1871, 48; *Williams* v. *Bidleman,* 7 Nev. 70.

III.    Section 2 of the act requires the officers to remove their offices to Winnemucca "on the week next preceding the first day of May, A. D. 1873."    The first day of May was Thursday; the "week next preceding the first day of May" ended at 12 o'clock the Saturday preceding Thursday.    It follows that the law required the county officers to have their offices at Winnemucca at least four days before May 1 and before Winnemucca was the county seat, which is forbidden by the constitution.    "All county officers shall hold their offices at the county seat of their respective counties." Art. XV, Sec. 7.    A "week" in the law is a definite, well understood and particular period of time commencing immediately after 12 o'clock Saturday night and ending at 12 o'clock Saturday night, seven days thereafter.    2 Bouvier's Law Dic. 647; 4 Peters, 361; 1 Mass. 256; 1 Barb. 46; 1 Selden, 517; 21 N. J. 151; 16 Barb. 350; 59 Me. 192; 16 How. 610; 32 Cal. 350; and particularly *State* v. *Yellow Jacket Co.,* 5 Nev. 415.    But in any view of when the week commences it is indisputable that the officers are required to remove their offices to Winnemucca at some time before the first day of May; and whether this be the *week* or *day* preceding is immaterial, for under the constitution they could

not be required to move their offices away from Unionville so long as Unionville was the county seat, and Unionville was the county seat until the first day of May. Sections 2, 3 and 4 are therefore all void, and nothing is left of the act but section 1.

IV. Section 1 fixes the county seat at Winnemucca on and after the first day of May. There are no public buildings in Winnemucca; no offices have been provided for the transaction of public business; no place has been secured for the safe keeping of the public records and archives. Can the court say this condition is consistent with the object the legislature had in view? Can the court say that in these circumstances the legislature would have enacted section 1 alone? To justify the preservation of part of an unconstitutional act the court should be convinced that what is preserved is not only constitutional but complete, and that the legislature would have enacted what the court preserves without reference to what the court destroys; otherwise the entire act must fall.

V. The act is unconstitutional and void, because it is a "local and special law in a case where a general law of uniform operation throughout the State is applicable." *Town of McGregor* v. *Baylies*, 19 Iowa, 46; *Hess* v. *Pegg*, 7 Nev. 30; *Thomas* v. *Com. Clay County*, 5 Ind. 5. What is meant by "cases where a general law can be made applicable"? The word "cases" occurs twice in section 21 of article IV of the constitution, and in the same connection and therefore in the same sense. The "cases" prohibited by section 21 must be of the kind or class specified in section 20; that is, a subject as "granting divorces," or "relocating county seats," not a particular thing as granting *a* divorce or relocating *a* county seat. The intention was to prevent the passing of local or special laws in *all* cases where a general law would be made applicable. The object was not to confer any power on the legislature, but to restrain that body in the exercise of an inherent power of sovereignty, which in the absence of such a restriction it would possess. *Gentile* v. *The State*, 29 Indiana, 413; *Ex parte Pretz*, 9 Iowa, 33;

*State ex rel. Stoutmeyer* v. *Duffy*, 7 Nev. 353; *Thomas* v. *Com. Clay County*, 5 Ind. 5. Section 21 of our constitution was borrowed from the constitution of Indiana. Const. Ind. Sec. 23; *Hess v. Pegg*, 7 Nev. 27. At the time it was borrowed the supreme court of Indiana had interpreted the section to have reference to the general subject of the "removal of county seats." *Thomas* v. *Com. Clay County*, *ante*. This interpretation was borrowed with the provision. *Ash* v. *Parkinson*, 5 Nev. 15; *Hess* v. *Pegg*, 7 Nev. 27. The interpretation thus became a part of the fundamental law; and the court can no more disregard it than they can disregard the constitutional provision itself.

VI. A general law upon the subject of removing county seats exists and is complete in all its parts. Stats. 1867, 78. In the view we have taken the fact of the general law is conclusive of this case. "But finally, all speculation upon this last proposition is unnecessary, for a general law upon this subject has been passed, and thus all room for doubt is removed." *Ex parte Pretz*, 9 Iowa, 36; *Town of McGregor* v. *Baylies*, 19 Iowa, 48. But if these decisions upon a constitutional provision word for word like our own (Const. of Iowa, Art. III, Sec. 30) are not to be followed, nevertheless the general law must be held applicable; because its applicabilty to the *subject* is established by the fact that under and pursuant to its provisions the county seat of Humboldt County was relocated at the town of Unionville in the year 1869, and the county seat of Churchill County was removed from La Plata to Stillwater. Though it be not sufficient to establish the applicability of the law to prove its existence; yet it must be sufficient to show in addition thereto that under it the objects and purposes of the legislature in its enactment have been accomplished or may be accomplished. Unless this be true no degree of proof will satisfy the judicial mind; and the mere fact of a "local" or "special" law will be conclusive of the subject.

VII. Again, it is alleged in the complaint that "said act is a special law in a case where a general law of uniform operation throughout the State exists and can be made appli-

cable." This allegation is not denied in the answer nor
otherwise controverted except by the suggestion that it is a
"proposition or conclusion of law." It is not a conclusion
of law, but a fact necessary to be proved and therefore
proper to be pleaded. If a fact, and material, and pleaded, it
must be denied or it will be taken as confessed. That it is
a fact, see *Gentile* v. *The State*, 29 Ind. 413; *Hess* v. *Pegg*, 7
Nev. 28.

VIII. Primarily the legislature must decide whether or
not in a given case a general law can be made applicable;
but such decision may be reviewed and upheld or reversed
by the courts. *Hess* v. *Pegg*, 7 Nev. 28. Here it is appa-
rent beyond doubt that the act in question is "local" and
"special" and that a general law can be made applicable to
the case. Nothing remains but the simple question, will
the court execute the command of the constitution? Will it
enforce the limitations the people have solemnly imposed
upon the legislative power, or will it open still wider the
door through which the infinite mischiefs of special legisla-
tion may be inflicted on the people? The case is one of the
greatest importance, not in its immediate results, but in its
remote consequences; for if the law be upheld the princi-
ples upon which alone it can be upheld remits the people to
that unfortunate condition and inflicts upon them those great
evils which prevailed during our territorial existence, when
the chief business of the legislature was the enactment of
special laws, and to prevent which the convention incorpo-
rated section 21 in the fundamental law. In short, if the law
is upheld it must be not only at the sacrifice of the constitu-
tion but the peril of the public welfare.

IX. Finally it is submitted that this case is decided—
decided as explicitly as though it were written in the para-
mount law—that "no local law should be enacted remov-
ing a county seat." Section 21 of the constitution is bor-
rowed from the constitution of Indiana. *Hess* v. *Pegg*, 7
Nev. 27. At the time of its adoption by the convention
and people of Nevada the provision had been interpreted
by the supreme court of Indiana, and held to *deny* the

legislature the power to remove a county seat by local or special law. *Thomas* v. *Com. Clay Co.*, 5 Ind. 4. In adopting the provision we adopted also the interpretation which it had received. *Ash* v. *Parkinson*, 5 Nev. 15; *Hess* v. *Pegg*, 7 Nev. 27; *People* v. *Coleman*, 4 Cal. 46; *Anderson* v. *Milliken*, 9 Ohio, 579. We invoke then as conclusive of this case the decision in *Thomas* v. *Com. Clay Co.* We invoke it because of the force of its reasoning and the soundness of the principles it establishes. We invoke it because (except as to the power of the court to review the legislative decision) it is nowhere questioned and has been repeatedly followed and upheld. We invoke it especially because the people of Nevada have adopted it, and solemnly incorporated its principles into their fundamental law.

*Lewis & Deal*, for Respondents.

I. This is not a case for injunction, although we admit there are cases which appear to sustain such a proceeding.

II. The real question involved is settled in this court by the cases of *Hess* v. *Pegg*, 7 Nev. 28, and *Clarke* v. *Irwin*, 5 Nev. 124. It is not claimed that there is any distinction between this case and that of *Hess* v. *Pegg*, except that in this, evidence was introduced by the plaintiff in the court below. But how that evidence bears on the question whether a general law could be made applicable is entirely beyond our comprehension; and what possible bearing the testimony has upon the real question involved is equally beyond the reach of our understanding. That Evans' taxes would be increased by the removal—that he owned property in Unionville which might be affected by such transfer of the county seat—that California and other states have laws general in their character for the removal of county seats—in no wise aids in establishing the fact that a general law could be made applicable to the case of Humboldt County, nor in any manner makes this case different from that of *Hess* v. *Pegg*.

Suppose a general law on the subject of county seats does exist? The question still remains, is it applicable to the cir-

cumstances making the removal of the county seat of Humboldt necessary?   And it may very well be said as was said in *Hess* v. *Pegg*, that the existence of the general law at the time of the passage of the special act only increased the presumption that the legislature at least thought the general law not applicable.   Such is the irresistible conclusion.   There is really no distinction whatever between this case and that of *Hess* v. *Pegg*, and we therefore invoke the rule of *stare decisis*. No decision should be reversed except upon the most urgent necessity and the clearest conviction that it is incorrect, especially a decision interpreting statutes and constitutions. 5 Nev. 120; 5 Cal. 403; Sedgwick on Const. Law, 253.  Should the decision of *Hess* v. *Pegg* be set aside it would result that the people of Washoe County would have imposed upon them useless expense by the erection of county buildings at Reno which could be of little or no use.   And again, it is quite probable, nay almost certain, that all the decisions of the district court rendered at Reno would be null and void; for the mere fact that the Supreme Court has upheld the law locating the county seat at that place does not by any means render acts valid which are done under an unconstitutional law.   The law if in conflict with the fundamental law is a nullity from the beginning, and the decision of a court does not make it valid.

III.   The constitution must if it admits of two interpretations be so construed as to sustain any act of the legislature rather than to annul it.   11 Wend. 511.   If then the sections of the constitution involved in this case can be so construed as to sustain the act without doing absolute violence to the language, that construction must be adopted. Now, evidently, the general object of the framers of the constitution, in adopting sections 20 and 21 of article IV of that instrument, was to secure general laws wherever they could be appropriately adopted.   General laws are laws which reach all persons or all subjects similarly situated or circumstanced.   To be general no law need reach cases unlike nor persons dissimilarly situated.   It follows that the

legislature would not be called upon to pass a law for the removal of county seats, which would include Humboldt County, unless the facts making the removal necessary in that county were the same as in other counties. Whether they were the same or not certainly is not shown to this court; and it cannot know that they were, unless it can place itself in the place of the legislature, or unless it have the evidence or facts which were presented to that body before it; and that it has not. General laws are only to be passed when they are applicable. "Applicable" means suitable, fit, corresponding with or having analogy to. A law is, then, applicable when it fully executes or effects the purpose of the legislature or the object desired to be accomplished—when it meets fully and completely the emergency which makes the passage of the law necessary. For example, if the facts of the case be such as to make haste necessary, or such as to make it necessary for the legislature to designate a particular place for a county seat, as was done in this case, a law which would not speedily effect the purpose in the first case or which would not necessarily locate the county seat in the latter at the desired point, would certainly not be applicable or suitable; it would in neither case accomplish the purpose of the legislature. See *Clarke* v. *Irwin,* 5 Nev. 122; 1 Kansas, 178; 7 Nev. 353. In this case the immediate object of the legislature was the removal of the county seat of Humboldt from one place to another specified in the act. This end could not possibly be accomplished except by a special act. The county seat could not be located at Winnemucca by a general law. Hence if the purpose of the legislature is to be accomplished at all—if it is not to be entirely defeated, the law adopted by it must be upheld.

IV. Manifestly section 21 of article IV of the constitution only prescribes the manner in which the legislature shall execute its functions. Its functions are as potent and extensive as if this section did not exist, but the method whereby those functions are to be exercised are regulated; and this is all that is sought to be effected by section 21. The consti-

tution says in clear and unmistakable terms to the legislature: the powers which you naturally possess or are given to you by other portions of this constitution to effect any given end or to accomplish any legitimate purpose of legislation, are not in any wise limited by this section; but in exercising those powers or in effecting those ends you must adopt a general law if you can. If you cannot then you may effect the same end by a special law.

V.   Neither can this court say that a general law would be applicable to this case even if no particular town were named in the act to which the county seat was to be removed.    To determine whether a general law can be made applicable it is not the subject of legislation alone which is to be considered; but, first, the subject; and, second, the circumstances making the removal necessary.   Facts might exist making the removal of the county seat necessary immediately, and this could not be accomplished by a general law perhaps; or a county might be divided and the new county requiring a county seat immediately could have it perhaps only by means of a special law; or facts might exist making it inexpedient to have a county seat at any but one particular town in a county which could probably be located at that place only by special law.   This court does not know that such facts did not exist, nor can it know, and therefore it cannot say, that a general law could be made applicable.

VI.   But the first section of the act is not necessarily void simply because some other section is unconstitutional; certainly not if the purpose of the legislature can still be accomplished.   *State* v. *Eastabrook*, 3 Nev. 180; 32 Md. 369. Here the main purpose of the legislature is embodied in the first section; the other sections are simply adopted as the means for carrying out that purpose.   As there are general laws, which will as effectually enable that purpose to be carried out as the sections adopted by it in this act, there is no reason why the first should not stand even if it be admitted that all the others are repugnant to the constitution.   It is a complete act in itself.   No other sections or provisions were really necessary.

VII.  As to the admissions in the answer, we doubt if the point should be noticed; but it may as well be suggested that when a mere legal proposition is alleged in a pleading and reasons are given for it, the failure to deny such allegation does not amount to an admission either of the proposition of law or the reasons.  In other words, when a brief is filed instead of a complaint, the defendant need not deny the argument.

By the Court, HAWLEY, J.:

This action was brought to restrain defendants, the county officers of Humboldt County, from removing their offices from the town of Unionville to Winnemucca in said county. The appeal is from an order of the court denying an injunction.

The legislature of this State at its last session passed "An act to remove the county seat of Humboldt County," which provides as follows:

" Section 1.  From and after the first day of May, one thousand eight hundred and seventy-three, the county seat of Humboldt County shall be located at the Town of Winnemucca in said county.

"Sec. 2.  It shall be the duty of all officers of said county, who are required by law to keep their offices at the county seat, to remove the same to said Town of Winnemucca on the week next preceding the said first day of May, A. D. eighteen hundred and seventy-three.

" Sec. 3.  The county commissioners of said county shall provide for the removal of the archives of said county and all other movable property belonging to said county to said Town of Winnemucca, and shall have power to sell and convey any real or immovable property situated in the Town of Unionville belonging to said Humboldt County, and shall pay the proceeds of such sales into the county treasury of said county.

" Sec. 4.  It shall be lawful for the board of county commissioners of Humboldt County; and it is hereby made their

duty, to provide for the use of the various public officers such buildings, rooms or offices as are required by law." Stats. 1873, 59.

The validity of this act is the only question to be determined. It is claimed by appellant that said act is in violation of Art. IV, Sec. 21 of the constitution of this State. The constitutional provisions necessary to consider are as follows:

"SEC. 20. The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:" [enumerating thirteen distinct subjects.]

"SEC. 21. In all cases enumerated in the preceding section and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

Probably no questions are ever presented to a court requiring more careful consideration than those involving a construction of the provisions of the constitution. The constitution ought always to be construed according to its true spirit and with special reference to carrying out the intention of those who framed it; taking into view the evils that were to be remedied, the dangers sought to be guarded against and the protection to be afforded. Sections 20 and 21 were doubtless incorporated into our State constitution to remedy an evil into which it was supposed the territorial legislature had fallen in the practice of passing local and special laws for the benefit of individuals instead of enacting laws of a general nature for the benefit of the public welfare. These sections were intended to prohibit the legislature from passing any local or special law in any of the cases enumerated in section 20, and to limit the passing of other local or special laws in all other cases where a general law would be applicable, that is to say, where a general law would be adapted to the wants of the people, suitable to the just purposes of legislation or effect the object sought to be accomplished.

It is evident to our mind that the framers of the constitution recognized the fact that cases would arise in the ordi-

nary course of legislation requiring local or special laws to be passed, in cases where in their opinion a general law might be applicable to the general subject but not applicable to the particular case. In other words, that a general law could not always be so moulded as to meet the exigencies of every case not enumerated in section 20. Without this right of discrimination the wheels of legislation would often be materially clogged and the wants and necessities of the people liable to be hampered, and the relief to which they were otherwise entitled oftentimes necessarily delayed.

The real difficulty lies in determining the exact boundary within which it was intended the legislature should be confined. That it was the intention of the framers of the constitution to allow the legislature to pass some local and special laws is apparent from the language used, " in all other cases where a general law can be made applicable," admitting as they here do that general laws would not be applicable in some cases. If they had intended to prohibit the passage of any local or special law they would have left out the enumerated cases and only said, " the legislature shall not pass any local or special laws." So far, we think the intention clear. But when we come to the consideration of the vital question, whether or not in any given case where a local or special law has been passed (not enumerated in section 20), a general law is or can be made applicable, we are liable unless we closely observe and strictly follow the ancient landmarks of interpretation, to be cast out upon a sea of uncertainty, without sail or rudder and with no safe guide to bring us on shore.

There is a certain class of local legislation, analogous to that under consideration, which has always been exercised by the legislature and acquiesced in by the people of this State, where any one acquainted with the elementary principles of legislation must know that a general law could be passed and made applicable to the subject. Yet it might not be applicable to every county in the State. We allude to the regulation of the salaries of the district judges and district attorneys throughout the State. Take for example the

office of district attorney: would it be fair that the salary of this officer in the County of Churchill should be the same as in Storey or Lincoln, where probably ten times the amount of business is transacted ? Certainly not. To cure this objection the general law might provide that in counties where the population was one thousand or less the officer should receive a stipulated sum, and then adopt a scale of prices regulated by the population of the county, or provide that the salary during the term of office should be regulated by the number of voters at the time of the election of the officer. Would such a law be suitable for every county in the State ? Is it not a fact that in certain counties there is more business to be transacted by this officer than in others of equal population ? Is it not true that in new counties or in counties where the principal business is that of mining, there is more business for this officer to attend to than in counties where the principal business is farming and agriculture, and that in such counties there might be a necessity for a local law providing greater compensation ? Such a law as we have mentioned might be applicable to some of the counties, but circumstances might arise in others making it necessary to pass local laws. So in regard to the location of county seats, there may be circumstances making it necessary to pass local laws.

In *State* v. *Johnson*, 1 Kan. 184, a case very similar to the one under consideration, the court said "there might be strong reasons arising from change of county lines or other causes for the passage of a law, such as the one in question, authorizing an election in a particular county to change the county seat; and yet there might be no circumstances existing or likely to arise in any other than that one county making such election expedient." In the absence of any showing of facts courts will presume that such exigencies exist. In *Wellington* v. *Petitioners, etc.*, Shaw, C. J., said: "If a legislative act may or may not be valid according to circumstances, courts are bound by the plainest principles of exposition as well as by a just deference to the legislature to

presume the existence of those circumstances which will support it and give it validity." 16 Pick. 97.

If we adopt the views so earnestly contended for by appellant it would be impossible for the legislature to pass any local or special law, because all subjects of legislation are more or less general; and to say that when the subject of the law was general a general law would be applicable would prohibit the legislature from passing any local or special law.

The organization of new counties is a subject upon which a general law could be passed and might be applicable in some cases. But insuperable difficulties might arise in others. Yet it being a general subject it would from the standpoint of construction adopted by appellant call for a general law; and although the exigencies or necessities of the case might demand a special law, it would be the duty of courts to declare such law unconstitutional. We are unwilling to place such an illiberal construction upon the constitution. We do not think that such an interpretation was ever intended by the men who framed it or the people who voted to adopt it.

It must be admitted as was said in *Gentile* v. *State*, that the object of section 21 " was not to confer any power on the legislature but to restrain that body in the exercise of an inherent power of sovereignty, which in the absence of such a restriction it would possess." 29 Ind. 413. The idea was, as we interpret the meaning, that no local or special laws should be passed in any of the cases enumerated in section 20. In all other cases local or special laws might be passed (as without section 21), when a general law would not meet the just purposes of legislation. But if a general law would accomplish that purpose it must be enacted.

We do not believe that any general rule can be laid down to determine the question of the validity of any local or special law under section 21. But it may we think with safety be said that a general law should always be construed by the courts to be applicable in all cases where the subject is one in which from its very nature the entire people of the State have an interest, as for instance regulating interest,

regulating common schools, statute of frauds, statute of limitations, and like subjects of legislation. But when only a portion of the people of the State are to be affected as in the case of locating county seats, then it must necessarily depend upon the particular facts and circumstances of each particular case, and no general rule can be laid down except this, that where a local or special law has been passed it will be presumed to be valid until facts are presented showing beyond any reasonable doubt that a general law is applicable.

In considering the question whether or not a certain act of the legislature was valid, C. J. Shaw said: "The delicacy and importance of the subject may render it not improper to repeat what has been so often suggested by courts of justice, that when called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt." *Wellington* v. *Petitioners*, 16 Pick. 95. In *Fletcher* v. *Peck*, C. J. Marshall said: "The question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom if ever to be decided in the affirmative in a doubtful case." 6 Cranch. 128. And the views of these eminent jurists have universally been quoted with approval. See Cooley on Const. Lim. 182, 183, and authorities there cited; also, *Griffin's Ex.* v. *Cunningham*, 20 Grattan, 34; *Clark* v. *People*, 26 Wend. 606; *Sharpless* v. *Mayor of Phil.* 21 Pa. 164; *Foster* v. *Essex Bank*, 16 Mass. 253.

It was contended by respondents that the final determination of this question was with the legislature, and that courts should not interfere with its decision. It has been decided in this State that it was first for the legislature but finally for the courts to determine whether or not a general

law could be made applicable (*Clarke* v. *Irwin*, 5 Nev. 124; *Hess* v. *Pegg*, 7 Nev. 28; *Stoutmeyer* v. *Duffy*, 7 Nev. 348); and such decision is in accordance with our present views, and is sustained by the weight of reason and a large preponderance of authorities. Cooley's Const. Lim. Secs. 78, 79, 80, 81, 82, 83, and authorities there cited.

The decision of the legislature will be consulted as an index of other minds, and will be regarded with the consideration due one department of the government by another. In *Coutant* v. *People* the court said: "Upon a question of real doubt as to the meaning of a particular clause in the constitution, a legislative construction, if deliberately given, is certainly entitled to much weight, although it is not conclusive upon the judicial tribunals." 11 Wend. 514; *Moore* v. *Veazie*, 32 Me. 360. This being true, upon what principles are courts to be governed in determining this vexed question? We must either adopt the views we have heretofore suggested, or accept the position contended for by appellant. To sustain his views would in our opinion as before expressed be to deny to the legislature under the present constitution any authority to enact any local or special law, for we cannot imagine any case where a general law could not be so framed as to apply to any given subject.

We are asked to adopt the reasoning in the case of *Thomas* v. *Commissioners of Clay County*. 5 Ind. 4, which is directly in point in favor of appellant; so are the decisions cited from Iowa under a constitution similar to ours. The Clay County case has been correctly interpreted and sufficiently explained in the former decisions of *Clarke* v. *Irwin*, 5 Nev. 124, and *Hess* v. *Pegg*, 7 Nev. 28. We consider the reasoning of the case unsound. The supreme court of Indiana expressly overruled it in *Gentile* v. *State, supra*. In *State* v. *Johnson, supra*, Ewing, C. J., said in regard to it, "we are not convinced by the reasoning, nor satisfied with the conclusion of that authority."

The courts in Iowa have so far followed the opinion in 5th Ind., but have added nothing to its reasoning. True in *Ex parte Pritz*, 9 Iowa, 36, after stating that a general law is

applicable, the court say: "But finally a speculation upon this last proposition is unnecessary, for a general law upon this subject has been passed and thus all room for doubt is removed. * * * A general law being passed, the question of the practicability of passing such a law is no longer an open one." This is quoted by appellant as conclusive of this case, because a general law upon the subject of locating county seats has been passed in this State. Stats. 1867, 78. All that the authority in Iowa decides is that a general law has been passed; but it by no means follows that because a general law has been passed upon the subject of locating county seats, such law is applicable to every county in the state.

In *Sears* v. *Cottrell*, Christiancy, J., said: "No rule of construction is better settled in this country, both upon principle and authority, than that the acts of a state legislature are to be presumed constitutional until the contrary is shown." 5 Mich. 259; see also, *Twitchell* v. *Blodgett*, 13 Mich. 150. In *Ogden* v. *Saunders*, Washington, J., said: "It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity." 12 Wheat, 270.

Judge Cooley says: "The constitutionality of a law then is to be presumed; because the legislature, which was first required to pass upon the question, acting as they must be deemed to have acted with integrity and with a just desire to keep within the restrictions laid by the constitution upon their action, have adjudged that it is so. They are a co-ordinate department of the government with the judiciary, invested with very high and responsible duties, as to some of which their acts are not subject to judicial scrutiny, and they legislate under the solemnity of an official oath, which it is not to be supposed they will disregard. It must therefore be supposed that their own doubts of the constitutionality of their action have been deliberately solved in its favor, so that the courts may with some confidence repose upon their conclusion as one based upon their best judgment." Cooley's Const. Lim. 183.

We are therefore inclined to the opinion that by the passage of the "Act to remove the county seat of Humboldt County," the presumption arises that the general law upon the statutes of this State was not applicable to Humboldt County.   This was the judgment of the legislature and in the absence of any affirmative showing to the contrary the law should be upheld.   Such was the decision in *Hess* v. *Pegg*, *supra*, which was a case on all fours with the one under consideration.   We consider *Hess* v. *Pegg* conclusive of this case and should have been content to announce our judgment upon the authority of that case.   But inasmuch as the principle involved is one of great importance and as the question has been argued with much earnestness and ability by respective counsel we thought it best to consider all the issues discussed and express our views in regard thereto, so as to avoid if possible any misapprehension hereafter.

The fact that the subject of the removal of county seats is general is admitted by respondents, and we do not understand them as denying the proposition that in some of the counties the general law might be applicable.   The real question is whether at the time of the passage of the law under consideration it was applicable to the removal of the county seat of Humboldt County—not from Unionville to Winnemucca, for appellant of course admitted that no general law could accomplish that purpose.

In what respect then does this case differ from *Hess* v. *Pegg?*   The fact that there are public buildings at Unionville and none at Winnemucca; that the county commissioners have not provided offices at Winnemucca; that Unionville is accessible to all parts of the county or that the plaintiff's taxes will be increased or decreased or himself or others be damaged, might have been proper questions to have submitted to the consideration of the legislative and executive departments in determining the expediency of the law, but in no wise prove or tend to prove whether or not a general law for removal of county seats was applicable to Humboldt County, which is the only question for us to con-

sider. Neither does the fact that a general law has been passed prove that it was applicable. Undoubtedly the presumption existed when the general law was passed that it was, and would be, applicable to every county in the State; but that presumption is met and overcome by the passage of the law under consideration, declaring, as in effect it certainly does that the general law is not applicable to this particular county.

The fact that under the general law the county seat of Humboldt County in 1869 was located at Unionville, or that the county seat of Churchill County was removed from La Plata to Stillwater only proves that the general law did accomplish the purpose and was at that time applicable to those counties, and does not establish nor tend to establish the fact that the general law is at present applicable, as contended for by appellant. In 1867 the county seat of Nye County was located at Belmont by a special law. Stats. 1867, 47. In 1871 a special act was passed providing for an election to locate the county seat in Lincoln County and also an act temporarily locating the county seat at Pioche. Stats. 1871, 64. Now, upon the reasoning of appellant, this might prove that the general law was not applicable to the removal of county seats; but we do not think that it proves anything except that the presumption arises that the general law was not applicable, else the special laws would not have been passed. The fact that a general law existed in California only proves (if it proves anything) that such a law was applicable to that state.

We have so far considered the case upon its merits. Appellant contends that sections 2, 3 and 4 of the act of 1873 are unconstitutional, and for that reason claims the law should not be upheld. We deem it unnecessary to notice specifically the several objections made by counsel, because in our judgment section 1 is valid and complete within itself.

The constitution (Art. XV, Sec. 7) provides that: "All county officers shall hold their offices at the county seat of their respective counties." Under this provision it would have been the duty of the county officers to remove from

Unionville to Winnemucca on the first day of May, 1873, even if section 2 had not been incorporated in the act. So far as the sale of the real estate and immovable property provided for in section 3 is concerned, sufficient authority therefor is given to the commissioners in the first, eighth and eleventh subdivisions of the law of 1871. Stats. 1871, 47. And in the absence of any special provision to that effect, it would be the duty of the board of county commissioners to provide for the safe removal of the archives and other movable property of said county. This avoids section 3. Under section 1 (Stats. 1871, 47), it is made the duty of the commissioners "to cause to be erected and furnished a court-house, jail and such other public buildings as may be necessary." There was not, therefore, any absolute necessity for incorporating either section one, two, three or four into the act.

It is well settled that when part of a statute is unconstitutional, that will not authorize the court to declare the remainder of the statute void unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed that the legislature would have passed one without the other. Cooley's Const. Lim. 177; *Commonwealth* v. *Hitchings*, 5 Gray, 485; *State of Nevada* v. *Eastabrook*, 3 Nev. 180; *Mayor of Hagerstown* v. *Dechert*, 32 Md. 584; *Santo et al* v. *State*, 2 Iowa, 187; *Robinson* v. *Bidwell*, 22 Cal. 386.

The true test of the constitutionality of such laws is thus expressed by Judge Cooley: "If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independent of that which was rejected, it must be sustained." Applying these rules to the act under consideration, we are convinced that the law must be upheld even if we concede that sections 2, 3 and 4 are unconstitutional. But we are unwilling to give our assent to the views maintained by appellant that section 2 is in violation of article XV, section 7 of the constitution because it requires the county officers to remove to Winne-

mucca "on the week next preceding the said first day of
May, 1873." Admitting, as claimed by appellant, that the
word "week" as often used refers to a period of seven days,
ending at Saturday night, 12 o'clock, still there are many
exceptions to such a meaning of the word. When a person
declares his intention to perform some act within one week
he means within a period of seven days. When we speak of
things that transpired within a week we mean within seven
days. When the law says that a notice shall be published in
a newspaper once a week for four successive weeks or for a
period of three months, the authorities cited by appellant
hold that the word "week" means "a particular period of
time commencing immediately after 12 o'clock Saturday
night and ·ending at 12 o'clock Saturday night seven days
thereafter." While the language "week preceding" may
be susceptible of the meaning claimed for it by appellant
and might be so construed in certain cases, yet it is evident
that such was not the meaning intended by the legislature
in this particular act, and it is this intent that must govern
in the construction of words used in the statute. "No
statute or law should receive such a construction as will lead
to absurd consequences." Respect for the framers will
always induce courts, when a particular sense applied to a
word will lead to such consequences, to infer that such was
not the sense in which it was used. Smith's Com. 425, Sec.
281; Dwarris on Stat. and Const. 676; Cooley's Const. Lim.
59; *McCullough* v. *State of Maryland*, 4 Curtis, 414; *State* v.
*Clark*, 29 N. J. 99. The object of section 2 was to require
the presence of the officers at Winnemucca "on the first day
of May, 1873," and the idea was that it might take a week
to remove and that the removal should take place within the
seven days prior to the first day of May. But viewed in
any light, the objection to this section as well as to sections
3 and 4 is probably too technical to merit as much con-
sideration as we have given it.

It is not a light thing to set aside an act of the legislature,
even when the objections to its validity are grave and
weighty; but when they touch not the substance of the law

but are merely criticisms upon its form or phraseology, the exercise of such a power by the judiciary of the State would be prolific of evil, and would soon be universally condemned.    5 Sand. 16.

It is alleged in the complaint that "said act (Stats. 73, 59) is a special law in a case where a general law of uniform operation throughout the State exists and can be made applicable;" and this allegation not being denied in the answer, appellant claims, must be taken as confessed—"determined by the pleadings." In our opinion the allegation states merely a conclusion of law, and should not have been inserted in the complaint, and the defendants were not required to answer it.    Conclusions of law should never be alleged.    The law only requires the pleader to set out the facts from which the conclusion of the law is to be drawn. This rule we think is so well settled as not to require any argument or citation of authorities to sustain it.

In conclusion, we again repeat that in our opinion there is nothing to distinguish this case from *Hess* v. *Pegg;* and if we had any doubt as to the correctness of that decision we should nevertheless be inclined to sustain it, because it is an almost universal rule in construing statutes and constitutions to adhere to former decisions. *Seale* v. *Mitchell & Wardwell,* 5 Cal. 403; *State* v. *Thompson,* 10 La. 123; *Nelson* v. *Allen and Harris,* 1 Yerger, 377; Sedgwick on Const. Law, 254, and authorities there cited.

The order of the district court denying an injunction is affirmed.