, [No. 1219.]

THE STATE OF NEVADA EX REL. JOHN B. WILLIAMS
    AND JOHN F. ALEXANDER, RELATORS, v. S. C. FOGUS
    ET AL., COUNTY COMMISSIONERS OF WASHOE
    COUNTY, NEVADA, RESPONDENTS.

CONSTITUTION—FEES AND SALARIES OF COUNTY OFFICERS—STATUTE CON-
    STRUED—LOCAL AND SPECIAL LAWS—TAX.—The act regulating the com-
    pensation of county officers (Stat. 1885, 85) is not in violation of section
    20, art. 4, of constitution, prohibiting the legislature from passing local or
    special laws "for the assessment and collection of taxes for state, county,
    and township purposes."
IDEM—LEGISLATURE—POWER OF.—It is within the power of the legislature to
    pass local or special laws regulating the compensation of county officers.
STATUTE 1885, 85—CONSTITUTIONAL—WASHOE COUNTY.—The statute of 1885,
    85, regulating the compensation of county officers, in so far as it relates
    to Washoe County, is constitutional.

APPLLICATION for *mandamus.*

The facts are stated in the opinion.

*J. F. Alexander,* for Relators:

I. The statute of 1885 is unconstitutional and void. (*Jones*
v. *Keep,* 19, Wis. 379; Const., art. 4, secs. 20, 21.)

II. The act of 1885 *is a law* upon the subject of assessment
and collection of taxes, and is not of uniform operation in any
sense. It is repugnant to section 17, article 4, of the con-
stitution.

III. The law is repugnant to the proviso of section 9, article
15, of the constitution. Legislatures control *revenue* for *public
purposes,* not the proceeds of *contracts.* (As to what nature of
compensation, see *Hatch* v. *Mann,* 15 Wend. 50; *Debolt* v. *Trus-
tees,* 7 Ohio St. 237; *Whiting* v. *Railroad Co.,* 25 Wis. 167;
*Taylor* v. *Chandler,* 9 Heisk. 349; *People* v. *Salem,* 20 Mich.
452;[1] *Loan Ass.* v. *Topeka,* 20 Wall. 655; *People* v. *Mayor,*
4 N. Y. 419; *Williams* v. *Detroit,* 2 Mich. 567; *Sears* v. *Cot-
trell,* 5 Mich. 275.)

*R. H. Lindsay,* for Respondents:

The act of 1885 does not in any manner provide for the col-
lection or assessment of taxes, and does not violate any of the

1 4 Am. Rep. 400.

provisions of the constitution in relation to that subject. (*Perry* v. *Washburn*, 20 Cal. 350; *City of Camden* v. *Allen*, 2 Dutch. (N. J.) 398; *Pierce* v. *City of Boston*, 3 Met. 520; *Shaw* v. *Peckett*, 26 Vt. 482.)

By the Court, HAWLEY, J.:

Relator Williams is county recorder and *ex officio* county auditor of Washoe County, and relator Alexander is district attorney of said county. They ask that the writ of *mandamus* be issued to compel the county commissioners to pass and allow certain claims presented by them in their official capacities, which they insist they are entitled to under the amendatory act to regulate the salaries of county auditors, "approved March 10, 1879" (Stat. 1879, 126); the "act to regulate fees and compensation for official and other services," approved February 27, 1883 (Stat. 1883, 62, sec. 10); the "act fixing the salaries of certain county officers," approved March 7, 1883 (Stat. 1883, 114); and the act relating to state and county revenue, approved March 9, 1865 (Stat. 1865, 271.) They contend that the fees and compensation of county officers which are collected for a public service is a tax, and base their claim for salary and fees under the acts above mentioned, upon the ground that the "Act regulating the compensations of county officers in the several counties of this state, and other matters relating thereto," approved March 11, 1885 (Stat. 1885, 85), is in violation of section 10, art. 4, of the constitution, which prohibits the legislature from passing any local or special laws "for the assessment and collection of taxes for state, county, and township purposes." In support of this position they cite and rely upon the decision of the court in *Manning* v. *Klippel*, 9 Or. 373.

Upon the oral argument, certain objections were urged against the entire act of 1885; but in considering the questions involved, we shall limit the discussion to that portion of the act which relates to Washoe County, as that is complete in itself, and is independent of the provisions which relate solely to other counties.

Did the framers of the constitution intend that the clause prohibiting local and special laws for the assessment and collection of taxes should apply to fees and compensation of

county officers? Is it within the power of the legislature to enact local or special laws providing for and regulating the fees and compensation of county officers? It must be conceded that the fees and compensation of county officers are, to some extent, in the nature of a tax upon the citizens of the county. The word "tax" has many meanings, and in its broadest significance includes fees, costs, and all other pecuniary burdens imposed upon the people under authority of law. But it does not follow, because taxes might in a certain sense include fees, that such was necessarily the intention of the framers of the constitution by the language used in the section referred to. License fees are often imposed under the general power of taxation, but they are sometimes imposed under the police power, and it is always the duty of courts, when the question is raised, to determine under which head the fees are to be classed, as the rules of law governing the one do not necessarily control the other.

An act of the legislature which is not prohibited by the express words of the constitution, or by necessary implication, ought not to be declared void as in violation of that instrument. It is only in cases where the provisions of the statute manifestly infringe upon the provisions of the constitution that courts are authorized to declare the statute void. Neither fees, salaries, nor compensation of county officers are named or necessarily implied in the provisions of section 20. These terms would not generally be understood as relating to the "assessment and collection of taxes."

Taxation is a tribute for the support of the government, imposed on property in return for the protection and advantages which the government affords to the owner. It is an essential and fundamental requisite in the exercise of the power of taxation that the burden should be imposed or apportioned, with all practicable equality and justice, upon a uniform rule. The prohibition in section 20 against the passage of local or special laws "for the assessment and collection of taxes for state, county, and township purposes," was only intended to apply to laws regulating the method of assessing and collecting taxes for the purpose of general revenue; and even as to that purpose, neither this provision, nor the provisions of section 1, art. 10, have ever been construed, and, in the

light of the contemporaneous legislation upon this subject, should not be construed, as a prohibition upon the power of the legislature to delegate authority to the county commissioners to fix the rate of taxation for county purposes in the several counties. This tax has never been uniform throughout the state. It has always been regulated with reference solely to the condition of the counties, and the rate is fixed in each county without reference to the rate established in others. The act of 1885,'" regulating the compensation of county officers in the several counties of this state," does not impose a tax for revenue purposes, and was not intended to have that effect.

This question was decided in *State* v. *Judges*, 21 Ohio St. 11, where it was contended by counsel that the fees and charges exacted under an act limiting the compensation of certain officers were in the nature of a tax for the purpose of raising general revenue. The court, in discussing the provision of the act, said: "The plain design of the act is not to tax those requiring official services, for the purpose of general revenue, but to require payment of a reasonable compensation for the facilities afforded and the services performed. If, in the practical operation of the act, the effect should be to leave a surplus, for the use of the county—which is contingent—this would result from the difficulty found in prescribing such rates of charges as to make the receipts exactly correspond with the cost of maintaining the offices. Exactness of correspondence in this respect cannot be attained; but experience and the keeping accounts of the receipts of the various offices will enable this end to be accomplished by reasonable approximation. * * * It is competent for the legislature to provide for compensating all public officers by salaries. If it should see proper to do so, we know of no provision of the constitution that would forbid exacting from persons requiring, and who are especially benefited by, the performance of official services, a reasonable compensation therefor, to be paid into the public treasury, to reimburse the public for the expense incurred in providing and maintaining such offices. It is not essential to such exactions that they should inure to the personal benefit of the officer. The officers are but the agents of the state for transacting the public business; and it is, in its nature, a matter wholly immaterial to those requiring their services whether the amount to be paid therefor goes to the officer, or

into the public treasury, provided no more is exacted than is just and reasonable for the facilities afforded and the services performed. If the exactions are called taxes, they become none the less such, as to those on whom they are imposed, by being paid to the officer than if paid into the public treasury." (See also *State* v. *Ream*, 16 Neb. 685.)

These views are decisive of the question under consideration; but there is another method of arriving at the intention of the members of the constitutional convention in inserting the various provisions of section 20, prohibiting local and special legislation, which will bring about the same result. We refer to the aid given by an examination of the debates in the convention upon this subject. Where "the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory." (Cooley, Const. Lim. 66.) When section 20 was presented in the convention, it prohibited the legislature from passing local or special laws "regulating the election of county and township officers, and their compensation, for the assessment and collection of taxes for state, county, and township purposes, in relation to fees and salaries." (Const. Deb. 146, 147.)

Mr. Frizell rose for information, and said: "This section says that the legislature shall not pass local or special laws in certain cases, and then the cases are enumerated. One clause of it seems to refer to the fees and salaries of county officers. Now, it appears to me that, although it might be possible to fix the fees of office at a uniform rate, yet, in cases where they are paid by salaries, those salaries must necessarily be different. In the county of Storey, for example, the county officers should have greater salaries than the same officers should be allowed in the county of Churchill, or some of the other counties."

Mr. Banks, in reply, contended that a general law could be passed that would provide equitably for the salaries of the officers "in different counties, where the duties are different"; that the legislature could abolish the fee system, and adjust the salaries of the officers; "that where the receipts are greater, the salaries should be greater, in proportion"; that the fees collected should be paid into the county treasury, and the salary regulated by the amount of fees paid; "that in that way they could have a general law which would be adapted to the wants of each particular county, no matter what amount of business was done in such county."

When the question recurred on the adoption of the original section, Mr. Frizell moved to amend it by striking out, after the words " county and township officers," the words " and their compensation "; also, by striking out the words " in relation to fees and salaries "; and in support of his motion said: " I do not think that any law can be made which will bear uniformly in regard to the fees and salaries of officers in this proposed state. I do not think that any general law can reach that subject fairly, if a general law can be made to reach it at all. * * * I think the subject is sufficiently regulated in section 21, which follows, where it is made obligatory on the legislature to make all laws uniform and general in their operation, in all cases where general laws can be made applicable. But, conscientiously speaking, I do not see that any general law can operate uniformly and correctly in this matter of the compensation of officers, and therefore I proposed to strike out those words." The question was taken, and the amendment was agreed to. (Const. Deb. 152.)

From this it will be seen that the question whether the legislature should be prohibited from passing local or special laws in relation to this subject was fully discussed and fairly presented. The fact that all clauses relating to this subject were excluded in expressing the will of the convention is significant. The adoption of the amendments furnish very strong evidence, and, considered in connection with the reason given therefor, it becomes conclusive that the members did not intend to place any restrictions upon the power of the legislature in regulating the fees and compensation of county officers by any of the provisions enumerated in section 20.

Section 21 provides that " in all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."

Could a general law be enacted which would be applicable to every county in the state? Any effort to draft such a law would be liable to result in making the compensation of officers wholly inadequate in the small and sparsely populated counties, or exorbitant in the larger and more populous ones. Some of the counties have much more legal and public business than others, and the compensation of officers, to secure the ends of justice and meet the requirements of the public service, should

be regulated with reference to the condition of the respective counties, and the amount and character of the business transacted therein. A fee-bill that would satisfy the people of Churchill County would not be apt to answer the requirements of the people in Eureka or Washoe counties.

In the present condition of affairs in this state, it would, at least, be difficult, if not impossible, to fix and graduate the compensation by population, or the amount of fees collected, so as to make a general law that would be applicable to every county in the state. We had occasion to refer to this subject in *Evans* v. *Job*, 8 Nev. 334, to show "that it was the intention of the framers of the constitution to allow the legislature to pass some local and special laws," and we then stated that local legislation had always been exercised by the legislature, and acquiesced in by the people, in regulating the salaries of certain county and district officers, and pointed out the difficulties that were liable to be encountered by attempting to make such laws of uniform operation throughout the state.

In *People* v. *C. P. R. R. Co.*, 43 Cal. 433, the court said: "It is obvious that every law upon a general subject is not, *per se*, nor by constitutional intendment, necessarily a law of a general nature. The subject may be general, but the law, and the rule it prescribes, may be special. Fees of office, for instance, constitute a general subject,—one which pervades the length and breadth of the state, and extends into every political subdivision of which it is composed,—yet a statute may prescribe what these fees of office shall be in a particular county, and may declare that they shall differ from fees established for the same official duties performed in another county. Such a law would not be a law of a general nature, involving the constitutional necessity of uniform operation, but it would be a special law upon a general subject; and at an early period in our judicial history the constitutionality of such a law was unhesitatingly sustained by this court." (*Ryan* v. *Johnson*, 5 Cal. 86.)

The case of *Miller* v. *Kister*, 68 Cal. 142, has no application to the case at bar, as it was decided under the new constitution of California, which expressly prohibits the legislature from passing local or special laws "affecting the fees or salary of any officer."

It is contended that in any event it was the duty of the commissioners to allow petitioners' claims under the acts men-

tioned in the petition, for services rendered by them during the period of time between the decision of this court in *State* v. *Boyd, ante,* 43, and the approval of the act of 1885. This position cannot be maintained. That decision related to the provisions of the act of 1883 attempting to make the treasurer of Washoe County *ex officio* assessor, and it was decided that the act, in so far as it established a "difference in the government of Washoe County from that of the other counties in the state, violates the uniformity contemplated by the constitution" in section 25, article 4. The decision did not affect the provisions of the act which related to the compensation of the county recorder and district attorney. The allowance to these officers for that period of time should be made under the provisions of that statute. (Stat. 1883, 73.)

We are of opinion that the legislature of this state has the power to pass local or special laws regulating the compensation of county officers; that the act of 1885, in so far as it relates to Washoe County, is constitutional, and that the respondents were justified in refusing to allow the claims presented by the relators. The writ of *mandamus* is denied.