[No. 1827]

JAMES M. RUSSELL, RESPONDENT, *v*. ESMERALDA COUNTY, APPELLANT.

1. STATUTES—TITLE—SUFFICIENCY.
    The act of February 27, 1883 (Comp. Laws, 2468-2507), entitled "An act to regulate fees and compensation for official and other services in the state * * * and to repeal all other acts in relation thereto," and regulating the fees of officers in the state, including sheriffs and constables, contains but one general subject and matter properly connected therewith, and is not in conflict with the constitution (art. 4, sec. 17) requiring each law to embrace but one subject and matter properly connected therewith.

2. STATUTES—GENERAL AND SPECIAL STATUTES—VALIDITY.
    The act of February 27, 1883 (Comp. Laws, 2468-2507), regulating the fees of officers in the state, including sheriffs and constables, and providing that the act shall not affect the fees of officers of any county wherein the total vote does not exceed 800, and the same shall apply to all future elections, etc., does not conflict with the constitution (art. 4, secs. 20, 21) prohibiting the passage of any special law in enumerated cases, and declaring that in the enumerated cases, and in all other cases where a general law can be made applicable, all laws shall be general, since a general law fixing the compensation of officers of counties cannot be enacted, as it would result in making the compensation of officers inadequate in the small counties and exorbitant in the larger counties.

3. CONSTITUTIONAL LAW—EQUAL PROTECTION OF THE LAWS.
    The act of February 27, 1883 (Comp. Laws, 2468-2507), regulating the fees of officers in the state, and providing that the act shall not apply to fees of officers of any county wherein the total vote of the last election did not exceed 800, and the same shall apply to all future elections, operates alike on all persons similarly situated, and does not deny to any citizen the equal protection of the laws in violation of the fourteenth amendment to the federal constitution.

APPEAL from District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan*, Judge.

Action by James M. Russell against Esmeralda County. Judgment for plaintiff, and defendant appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*Augustus Tilden*, District Attorney, and *George Springmeyer*, Deputy District Attorney, for Appellant:

I. Does the act of 1883, in providing for fees and compensation of constables for service and travel in criminal cases,

refer to section 5 of the act of 1875, or to section 5 of the act of 1883?

It would seem that the language of the statute of 1883 is clear and explicit in this regard. Whether the words, "for service and travel in criminal cases, the same fees as are allowed sheriffs for similar services," have a plain meaning, can best be determined by finding whether the same act provides that the sheriff receive any fees for such service and travel. It certainly does. Stats. 1883, sec. 5, pp. 59–60 contains these provisions: "The fees allowed to sheriffs shall be * * * for every arrest in a criminal proceeding, two dollars; for service of any process in a criminal case, the same mileage as in civil cases." The simple and natural construction of the language, and the plain meaning of the words, seem to be that the reference in section 7 to the fees allowed sheriffs is to section 5 of the same act. That is to say, the quoted provisions of section 5 are incorporated by reference into section 7, and the latter is to be read as though the language of section 5 referred to were written out at length in section 7 at the time of its adoption. This is especially true when it is observed that section 5 of the act of 1875 is admittedly repealed by section 5 of the act of 1883, so far as it relates to sheriffs. The coincidence that the language of section 7, in the act of 1875, as to constables' criminal fees is preserved in the act of 1883 is of no consequence. Upon that basis, it would be useless to proceed further for when "the language is clear, plain, simple and unambiguous and susceptible of but one construction, there is nothing left to construe." (11 Nev. 118; 6 Nev. 104; 8 Nev. 271.)

II. It is a well-known principle of statutory construction that the whole of the act and all of its parts are to be taken together. In *Leet* v. *John Dare Silver M. Co.*, 6 Nev. 222, our supreme court uses this language: "Section third of these mining laws thus construed harmonizes with other parts of the same laws. The entire mining law must be construed together." This is certainly very *apropos.* Further, if possible, the meaning should be gathered from the act itself and confined to it. The rule is well stated in 26 Am. & Eng. Ency. Law, p. 600: "It is the duty of a court neither to add anything to nor to take anything from a statute unless good

grounds appear for thinking that the legislature intended something which it has failed precisely to express," and numerous cases are cited. *State* v. *Toll Road Co.*, 10 Nev. 160, holds on this subject: "In arriving at the intention of the legislature we must look at the whole act, its object, scope, and extent, and find out, from the act itself if possible, what the legislature meant." So in *Maynard* v. *Johnson*, 2 Nev. 25: "The whole statute is to be taken together and so examined as to arrive at the intent, if possible." And again in the same decision: "We are bound in expounding a statute to construe one part by the light we derive from other parts." And in 10 Nev. 365: "The meaning may be sought by examining the context and by considering the reason or spirit of the laws." Again, in 26 Am. & Eng. Ency. Law, p. 604, it is said: "Words are to be interpreted with reference to the subject-matter of the statute in which they are used, for the legislative intention may often be deduced from a consideration of the subject-matter and the purpose of the act."

III. It follows, then, that to find for the plaintiff the language of the statute must first be held to be ambiguous. Then, after resorting to all known canons of construction or interpretation, that it must be concluded that a strained and unnatural meaning must be given to the words of a statute which is otherwise clear and unambiguous. It must be found that, while the provisions of section 5 of the act of 1875 were repealed so far as they applied to sheriffs, yet they were reenacted so far as they applied to constables. It would be easier to assume that if the legislature had intended such a result, it would have left out altogether that portion of the section having to do with criminal fees.

*Thompson, Morehouse & Thompson*, for Respondent:

I.   This act (Stats. 1883, p. 56), and particularly secs. 5 and 7, is unconstitutional in this, to wit: It violates section 17 of article 4 of the state constitution in the matters of which we complain, because the title of the act "An act to regulate fees and compensation for official and other services in the State of Nevada, and repeal all other acts in relation thereto" contains within the body of the act incongruous matter, not connected

with or included in the title, or else the title must be held to contain more than one subject.    There is no question but the legislature may classify counties under section 20 of article 4 of the state constitution, as amended in 1889, for the purpose of "establishing and regulating the compensation and fees of county and township officers," but an act that fixes the compensation and fees of the county and township officers, and at the same time fixes the fees, which the public at large must pay for certain services must as to the fees paid by the public be general and uniform.    "Compensation and fees" in this constitutional provision might possibly apply, as attempted in this act, if the act as to fees applied to every county in the state; but the moment you classify counties into groups, so as to create different counties as classes, for the purpose of giving a sheriff in one county a larger salary than some other county, which no doubt can be done, then the word "fee" in the constitution means his pay or compensation by fees, as distinguished from salary; but does not mean "fees" as applied to the charge made for his services in a matter, for instance, serving a writ of attachment, and by that means make a certain fee to be paid by a litigant in Esmeralda County and a different fee in Lyon County.    This constitutional provision (sec. 20, art. 4) uses the word fees as the mode of payment of the compensation of the officer; that is to say, he may have his compensation fixed as a salary, or in lieu thereof be paid in fees.    Therefore, the legislature may classify counties in one of which the officer is paid a salary and in another by fees.    But, in so classifying, the legislature cannot make the fee paid the officer for his services by an individual different in the different counties throughout the state, because, by section 21 of article 4 of the constitution, all laws fixing the price or fee which the individual pays must be general and uniform.

II.    The act of 1865 is general and applies to all counties alike, but the act of 1883, aforesaid, applies to only certain counties, and in these counties section 5 and section 7, relating to sheriffs and constables, lower the fees chargeable against the people in their common right, so that a man living in Lyon County, under the act of 1865, applicable to that county,

must pay the sheriff a vastly higher fee for the same official services than a man in Esmeralda County. Why this difference? It is not intrinsic, nor a natural difference. The subject of the legislation is one of a general nature and applies to all the people. It cannot be classified at all. All people who are called upon to pay for the service of a subpena are in the same class. Likewise, all persons who want a complaint or a summons or any writ served are of the same class and it matters not what county they live in. They cannot be differentiated because residents of different counties. The fee to be paid must be the same to all the people in every county. Therefore, the schedule of fees, fixed by sections 5 and 7 of the act of 1883, is unconstitutional, beyond any doubt, because such schedule not being the subject of special legislation, or classification by counties, must fall unless made applicable to all counties.

III. This very constitutional question arose in *Bloss* v. *Lewis*, 109 Cal. 493, and is declared to be unconstitutional, because in violation of section 4 of article 11 of the California constitution, which is section 25 of article 4 of the Nevada constitution, and in violation of section 11, article 1, of the California constitution, which is section 21 of article 4 of the Nevada constitution.

IV. Again, in 1883 the state constitution specially prohibited the passing of local or special laws (sec. 20, art. 4) "regulating county and township business." This legislation is certainly regulating county and township business. (*Welsh* v. *Bramlet*, 98 Cal. 219; *Bloss* v. *Lewis*, 109 Cal. 493.) And the state constitution was not changed until 1889. So this act was within the inhibition of the state constitution at the time of its passage.

*R. C. Stoddard*, Attorney-General, *Augustus Tilden*, and *George Springmeyer*, for Appellant, in reply:

I. The title and the body of the act of 1883 speak for themselves. But if further investigation be necessary, a comparison of the body of the act and its title with the bodies of the acts and titles held constitutional in the following Nevada cases will be found conclusive: *State* v. *Ruhe*, 24 Nev. 251;

*State* v. *Washoe Co.*, 22 Nev. 235; *State* v. *Trolson*, 21 Nev. 419.)
The next contention of respondent is that the act of 1883 is
bad because it "regulates county and township business" and
is "local or special" legislation instead of being of "general
and uniform operation throughout the state," as required by
the constitution.    He says this is the fact because individuals
pay different fees to officers in the different counties for the
same kinds of official services.    This proposition appellant
earnestly controverts in this:    That the act is not "local or
special" legislation at all, and appellant asserts that it is with-
out any question a law that is of "general and of uniform
operation throughout the state."

II.    This principle, taken in connection with the well-
established proposition that courts will use every reasonable
intendment to sustain the constitutionality of a law and will
uphold it unless it is proved bad beyond a reasonable doubt,
places all the burden upon the respondent.    It would be vain
to pursue this line of inquiry further.    The examination made
reveals that before the constitutional amendment of 1889, as
now, the Legislature of Nevada could pass local or special
laws regulating the compensation of county and township
officers.    Can there be any doubt that it could pass a general
law such as the act of 1883, making a reasonable classification
on the basis of population regulating such compensation?

III.    And now we come to the final constitutional principle
involved.    It is this: The constitutional questions above dealt
with and so vigorously urged by respondent cannot by him
be taken advantage of for the reason that he is not a party
prejudiced.    He does not come within the class of Lyon
County citizens who may object to paying the Esmeralda
County fees; he does not come within the class of Esmeralda
County citizens who may object to paying the Esmeralda
County fees.    He is simply a recipient of fees, an official who
has a claim for which he is suing the county, and conse-
quently he is precluded from raising questions pertaining to
the constitutional rights of the person subject to such fees;
*i. e.*, the payer of such fees.

IV.    "Nor will a court listen to an objection made to the
constitutionality of an act by a party whose rights it does not

affect, and who has therefore no interest in defeating it."
(Cooley Const. Lim. 7th ed. 232.) "Only those whose rights
would be prejudiced by the enforcement of an unconstitutional
act will be heard to question its validity." (6 Am. & Eng.
Ency. Law, 1090, and cases there cited.) "It is a firmly
established principle of law that no one can be allowed to
attack a statute as unconstitutional who has no interest in it
and is not affected by its provisions." (8 Cyc. 787, and cases
cited.) Is respondent in the position of a party prejudiced
simply because his fees are fixed by the law he is attacking?
The New York courts, in *Town* v. *Loveless*, 72 N. Y. 211;
*People* v. *Brooklyn*, 89 N. Y. 75; *Hall* v. *People*, 90 N. Y. 498,
and *People* v. *Turner*, 49 Hun, 466, 2 N. Y. Sup. 255, hold
that the constitutional inhibition against taking property
without due process is for the benefit of owners of the property
and cannot be taken advantage of by a person whose property
is not being so taken. So, too, a person charged with crime
under a statute cannot raise the question of its constitution-
ality upon grounds not connected with its relation to criminals:
(*State* v. *Rauch*, 47 Ohio St. 478, 25 N. E. 59; *State* v. *Snow*,
3 R. I. 64; *State* v. *Potterfield*, 47 S. C. 75, 25 S. E. 39; *Rut-
ter* v. *Sullivan*, 25 W. Va. 427.) "Courts will not pronounce
a statute unconstitutional because it may impair the rights of
persons not complaining of its unconstitutionality," said the
court in *Antonio* v. *Wright*, 22 Grat. 833. The quoted excerpts
from the decisions make the law clear. What, then, is the
position of the respondent and what are his rights? He is
suing Esmeralda County for fees earned in his official capacity
as constable. He says the act of 1883 here in question is
unconstitutional, because: (1) It does not provide the same
fees in each county in the state. (2) It abridges and denies
the privileges and immunities and the equal protection of the
laws to the citizens of the several counties who may have occa-
sion to pay fees. The respondent is not attacking the law in
his capacity as a citizen so wrongfully discriminated against;
he does not belong to the class prejudiced. Consequently, he
is not in a position to assert any rights in the premises and
cannot assume the rights of persons not complaining.

By the Court, NORCROSS, C. J.:

This is an action brought by respondent, as plaintiff, against the appellant, Esmeralda County, to recover a judgment for $3,954.70 alleged to be owing him on account of an unpaid balance for fees as constable of Goldfield Township, in said county, and accruing between the 1st day of March, 1905, and the 30th day of December, 1906, inclusive. The plaintiff had presented monthly bills to the county for fees and disbursements, covering the time mentioned, aggregating $13,815.75. The board of county commissioners, acting for the defendant county, allowed on account of these several claims the aggregate sum of $9,861.05 and refused to approve or allow the same in any greater amount. The case was tried upon an agreed statement of facts, and judgment awarded in favor of the plaintiff for the full amount sued for. From the judgment, the defendant county has appealed.

By the provisions of the agreed statement of facts, appellant cannot recover, unless the provisions of Comp. Laws, 2460, 2462, are applicable to his case. These sections of the Compiled Laws are sections 5 and 7, respectively, of an act entitled "An act to regulate fees and compensation for official and other services in the State of Nevada," approved March 9, 1865, as amended, Stats. 1875, p. 147, 149. Section 5, *supra*, related to the fees allowed to sheriffs, and section 7, *supra*, the fees allowed to constables, by reference, constables were allowed for certain services in criminal cases "the same fees as are allowed sheriffs for similar services."

By an act approved February 27, 1883, entitled "An act to regulate fees and compensation for official and other services in the State of Nevada, and to repeal all other acts in relation thereto" (Comp. Laws 2468–2507), another comprehensive act was passed regulating fees of officers in this state, including the offices of sheriff and constable. Sections 5 and 7 of this latter act corresponded with the same numbered sections of the act first mentioned, excepting that the fees allowable were lower. By section 41 of the act of 1883 (Comp. Laws, 2506), it is provided that "the provisions of this act shall not apply to or affect the fees of the officers of any county in this

state wherein the total vote of the last election did not exceed
eight hundred, and the same shall apply to all future elec-
tions, and it is hereby provided that in such counties 'An act
to regulate fees and compensation for official and other serv-
ices in the State of Nevada,' approved March 9, 1865 (see
section 2457, *et seq.*), and the act amendatory thereto, shall
remain in full force and effect." Section 42 of the act (Comp,
Laws, 2507) reads: "This act repeals all other acts and parts
of acts now in force, relating to fees of officers, which fees are
collectible by said officers from the persons for whom said
services are rendered." It was agreed that at the general elec-
tion in November, 1904, the total vote of Esmeralda County
exceeded 800.

We think it was clearly the intention of the legislature that
the provision of section 7 of the act of 1883 (Comp. Laws,
2474), reading, "for services and travel in criminal cases, the
same fees as are allowed sheriffs for similar services," referred
to section 2472. In the lower court, it would appear that
counsel for respondent contended that, under certain rules of
statutory construction, this would not be the case, but as no
such contention is urged in the brief upon appeal, that
position, we think, may be regarded as abandoned for lack of
merit.

Counsel for appellant makes the sole contention upon this
appeal that the act of 1883, *supra*, is void, in that it violates
certain sections of the state and federal constitutions. It is
first contended that it is contrary to the provisions of section
17, article 4, which requires that: "Each law enacted by the
legislature shall embrace but one subject, and matter properly
connected therewith, which subject shall be briefly expressed
in the title." We think this contention is without merit.
The act deals exclusively with the subject of fees which public
officers may charge for official services and compensation
which they may receive for services rendered by virtue of their
official position. The act contains but one general subject
and matter properly connected therewith. No authorities
whatever have been cited supporting counsel's contention that
this act violates the provision of the constitution in question.
The following cases, we think, support the view that the act is

within this particular constitutional requirement: *State* v. *Ah Sam*, 15 Nev. 27, 27 Am. Rep. 454; *Esser* v. *Spalding*, 17 Nev. 308; *State* v. *Silver*, 9 Nev. 231; *State* v. *Atherton*, 19 Nev. 344; *Bell* v. *District Court*, 28 Nev. 296; 1 L. R. A. (N. S) 843, 113 Am. St. Rep. 854; *State* v. *State Bank and Trust Co.*, 31 Nev. 456; *State* v. *Frazier*, 59 Pac. 5. The contention that the act of 1883 is violative of sections 20, 21, article 4, in that it is not of general and uniform operation throughout the entire state, is answered, we think, by former decisions of this court.

In the case of *State* v. *Fogus*, 19 Nev. 247, this court by Hawley, J., said: "From this" (referring to extracts from Constitutional Debates) "it will be seen that the question whether the legislature should be prohibited from passing local or special laws in relation to this subject was fully discussed and fairly presented. The fact that all clauses relating to this subject were excluded in expressing the will of the convention is significant. The adoption of the amendments furnish very strong evidence, and, considered in connection with the reason given therefor, it becomes conclusive that the members did not intend to place any restrictions upon the power of the legislature in regulating the fees and compensation of county officers by any of the provisions enumerated in section 20. Section 21 provides that 'in all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state.' Could a general law be enacted which would be applicable to every county in the state? Any effort to draft such a law would be liable to result in making the compensation of officers wholly inadequate in the small and sparsely populated counties, or exorbitant in the larger and more populous ones. Some of the counties have much more legal and public business than others, and the compensation of officers, to secure the ends of justice and meet the requirements of the public service, should be regulated with reference to the condition of the respective counties, and the amount and character of the business transacted therein. A fee bill that would satisfy the people of Churchill County would not be apt to answer the requirements of the people in Eureka or Washoe Counties.

"In the present conditions of affairs in this state it would, at least, be difficult, if not impossible, to fix and graduate the compensation by population, or the amount of fees collected, so as to make a general law that would be applicable to every county in the state. We had occasion to refer to this subject in *Evans* v. *Job*, 8 Nev. 334, to show 'that it was the intention of the framers of the constitution to allow the legislature to pass some local and special laws,' and we then stated that local legislation had always been exercised by the legislature, and acquiesced in by the people, in regulating the salaries of certain county and district officers, and pointed out the difficulties that were liable to be encountered by attempting to make such laws of uniform operation throughout the state. In *People* v. *C. P. R. R. Co.*, 43 Cal. 398, the court said: 'It is obvious that every law upon a general subject is not *per se*, nor by constitutional intendment, necessarily a law of a general nature. The subject may be general, but the law, and the rule it prescribes, may be special. Fees of office, for instance, constitute a general subject—one which pervades the length and breadth of the state, and extends into every political subdivision of which it is composed—yet a statute may prescribe what these fees of office shall be in a particular county, and may declare that they shall differ from fees established for the same official duties performed in another county. Such a law would not be a law of a general nature, involving the constitutional necessity of uniform operation, but it would be a special law upon a general subject; and at an early period in our judicial history the constitutionality of such a law was unhesitatingly sustained by this court. (*Ryan* v. *Johnson*, 5 Cal. 86.)' The case of *Miller* v. *Kister*, 68 Cal. 142, 8 Pac. 813, has no application to the case at bar, as it was decided under the new constitution of California, which expressly prohibits the legislature from passing local or special laws 'affecting the fees or salary of any officer.' "

In the case of *Comstock M. & M. Co.* v. *Allen*, 21 Nev. 325, 330, this court, by Bigelow, J., said: "It is first contended that this act is unconstitutional, upon the ground that it is special legislation, applicable only to Ormsby County; and, as such, in conflict with section 20 of article 4 of the constitution

as it stood prior to the amendment adopted in 1889. It becomes necessary to pass upon this question, because that act allows larger fees for these services than are allowed by the general statutes, which, if this act is unconstitutional, would govern their amount. If the statute was in conflict with the constitution as it stood at the time of the passage of the law, the subsequent change in the constitution authorizing such legislation would not validate it. (*State* v. *Tufly*, 20 Nev. 427, . 19 Am. St. Rep. 374.) We are of the opinion, however, that in the case of *State* v. *Fogus*, 19 Nev. 247, the question of the constitutionality of such a statute was settled adversely to the appellant, and, as the reasoning of the case seems clear and satisfactory, we see no grounds for refusing to follow it here." (See, also, *State* v. *Spinner*, 22 Nev. 213.)

We are unable to see any force in the contention that this act (1883) is violative of section 1, article 14, of the amendments to the federal constitution. The law operates alike on all persons similarly situated, and hence it cannot be said to deny to any citizen the equal protection of the law or abridge the privileges or immunities thereof within the purview of this section of the constitution. (*Walston* v. *Nevin*, 128 U. S. 578, 9 Sup. Ct. 192, 32 L. Ed. 544; *Barbier* v. *Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Hayes* v. *State*, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578; *Cook* v. *State*, 90 Tenn. 407, 16 S. W. 471, 13 L. R. A. 183.) Similar statutes exist in many states, and we are not aware of their ever having been successfully attacked on this ground. It is our conclusion that the act of 1883, *supra*, is constitutional, and, as respondent was allowed his fees in accordance with its provisions, it follows that he is not entitled to recover in the action.

It was contended by counsel for appellant that, as the respondent accepted and was paid the allowance upon his claims made by the county commissioners, he is not entitled to sue for the amount disallowed. As this contention is raised for the first time upon the appeal, and there is a question of its waiver under the stipulation, we have not given it any consideration.

The judgment is reversed, and the cause remanded.