[No. 1469.]

## R. SCHWEISS, Relator, v. THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA IN AND FOR STOREY COUNTY, Respondent.

County—Quasi Corporation—Powers.—A county is not a municipal corporation, in the full sense of the term. It is only a *quasi* corporation, and possesses such powers and is subject to such liabilities only as are specially provided for by law.

Idem—Constitutional Law—Government Uniform.—Art. IV, sec. 25, Constitution of Nevada, which requires the legislature to establish a system of county governments, which shall be uniform throughout the state, means that all county governments must, in all essential particulars, be alike.

Idem—Storey County.—The act of the legislature of March 15, 1895 (Stat. 1895, p. 73), entitled "An act to incorporate Storey county and provide for the government thereof," is void because in conflict with that section (Sec. 25, art. IV) of the constitution in many particulars.

Idem—Local and Special Act.—It is also a local and special act regulating county business, and consequently in conflict with sec. 20 of art. IV, of the constitution, which forbids such legislation. (Syllabus by Bigelow, C. J.)

Original proceeding. Application for writ of prohibition by R. Schweiss against the First Judicial District Court of the State of Nevada in and for Storey county. Writ refused.

Original application for a writ of prohibition. The petitioner was convicted in a justice's court of the offense of keeping a saloon in the city of Virginia, wherein liquors were sold by the glass, without having obtained the license therefor required by an ordinance of said city. From this conviction he appealed to the district court of the first judicial district, Storey county, where his demurrer to the complaint upon the grounds that it did not state facts sufficient to constitute a cause of action against him, and that the court had no jurisdiction of the offense charged, was overruled, and the case set for trial. Thereupon he filed his petition herein, setting out the above facts and asking that the court be prohibited from proceeding further in the trial thereof. The defendant demurs upon the ground, among others, that the petition does not state facts sufficient to constitute a proper ground for the issuance of the writ.

*F. M. Huffaker*, for Petitioner:

I.    The only question to be determined by the court is the validity of the act of the legislature of the state of Nevada entitled "An act to incorporate Storey county and provide for the government thereof," approved March 15, 1895 (Stats. 1895, p. 73).    If this act is within the power of the legislature, the writ of prohibition herein must be made perpetual.

II.    The legislature has complete control of the entire subject of counties, except where limited by the constitution (*Hess* v. *Pegg*, 7 Nev. 23), and it has unlimited power, under the constitution, to create municipal corporations, therefore the legislature alone is to say what territory a municipal corporation shall occupy.    In fact, it is now well settled that a municipal corporation is such as the legislature may declare, whether a town, city, district, county or parts of two or more counties, or even a state.    (*Matter of Bonds, M. Trg. Co.*, 92 Cal. 296; *Winbigler* v. *Los Angeles*, 45 Cal. 36; 2 Kent, 275.)

III.    If, as said in *Hess* v. *Pegg, supra*, the legislature has complete control of counties, then there can be no constitutional objection as to what the legislature shall do with a county, so long as it does not attempt to regulate the business common to all the counties differently in one county from the others, or to provide a different system of county government in one county from that of another.

IV.    What may be within the constitutional inhibitions is explained by the court in *Williams* v. *Bidleman*, 7 Nev. 68, to include an act auditing and allowing a claim against a county, or an act directing the commissioners to allow a claim which they had rejected, as being special acts regulating county business, while in *Churchill Co.* v. *Humboldt*, 6 Nev. 30, it is held the legislature has the power to say what claims against the county shall have preference in payment; and in *Odd Fellows' Bank* v. *Quillan*, 11 Nev. 109, that the act of February 17, 1873 (Stats. 1873, 54), authorizing Lincoln county to fund its indebtedness, was a legitimate exercise of legislative powers, and not a regulation of county business. Then, when the act of 1895 leaves the business of Storey county to be as heretofore in all respects and the system of county government untouched, how can it be claimed that an

act creating a municipal corporation of Storey county is either a regulation of county business or an establishment of a system of county government? It would seem the two are so distinct that any misconception of them should be impossible.

V. The system of county government, which the constitution declares shall be uniform, is not touched by the act of 1895, which simply transfers the property and revenues of the city of Virginia and town of Gold Hill to Storey county, which is neither regulating county business nor establishing a system of county government.

*Langan & Knight,* for Respondent:

I. The legislature has the right to say all counties shall be municipal corporations, but it cannot say one particular county shall be a municipal corporation, because, in making it such, it gives it a government not uniform with the other counties of the state, which is the thing inhibited by secs. 25 and 20 of art. IV of the Nevada constitution, for when the constitution points out one mode of doing an act (filling an office), the legislature cannot substitute another. (*State* v. *Arrington,* 18 Nev. 412.)

II. If the act of 1895 created within the boundaries of Storey county a municipal corporation only, and did not seek to form a new and different county government from that of other counties, or from that by which Storey county was theretofore governed, and provided for the government of such municipal corporation and left the affairs of Storey county to be administered under the general laws theretofore existing, but merely directing that certain county officers should also perform certain duties for the municipality, there would be no constitutional objections to the act as a whole except its defective and improper title.

III. Under our constitution this court says that laws may be passed which do not affect every county of the state alike, if they are so framed as to affect all such counties as may meet the conditions of the laws, provided those conditions are based on a real and substantial difference in the circumstances of the county, and upon a fair classification under which any and all counties might come at some time. But,

in so doing, the court also holds that no law specifying a different governmental authority for one county from that of the other counties of the state, and no local or special law regulating county or township business, can be passed, and that a law designating one county within which it is to operate, or a law affecting to classify counties but in which the classification is apparent and illusory rather than actual and substantial, is such a local and special law establishing such a difference, and is therefore unconstitutional. (*State* v. *Boyd*, 19 Nev. 43; *Williams* v. *Bidleman*, 7 Nev. 68.)

IV.   The purposes of the act of 1895 as expressed in the title are forbidden by the constitution.   Those purposes are: (1) To incorporate one particular county—Storey—not all the counties of the state.   Such special purpose of the Act is in conflict with art. IV of the constitution, secs. 20, 21 and 25, also with sec. 1 of art. VIII of the constitution, which forbids the passage of special or local acts relative to corporate powers or the creation of corporations except for municipal purposes.   A county is not a municipal corporation within the meaning of the constitution, or in the general acceptation of the term.   (2) To provide for the government of Storey county—not the counties of the state of Nevada, but one individual county—is directly contrary to sec. 25 of art. IV of the constitution, also to sec. 21 of said article, for the subject of county governments is one to which, by its very nature, general laws may be made applicable.

By the Court, BIGELOW, C. J.:

The question involved in this case is the validity of the act of the legislature entitled "An act to incorporate Storey county and provide for the government thereof," approved March 15, 1895 (Stats. 1895, 73).   Its constitutionality is attacked upon several different grounds, of which it will be necessary to notice but one or two.

Section 1 of the act describes Storey county, not by name, but by metes and bounds, and then creates the territory so described into a municipal corporation by the name of Storey county, with large and varied powers—among them that of having a common seal, of holding and enjoying both real and personal property, either within or without the munici-

pality, and the same to buy, sell and mortgage, to receive bequests, gifts and donations of property, either in fee simple or in trust for charitable or other purposes, with power to manage, sell, lease or otherwise dispose of the same in accordance with the terms of the trust.

Section 2 provides that all buildings, lands and property, all rights of property and rights of action, all moneys, revenues and incomes belonging or appertaining to Storey county, evidently referring to the county as it now exists, to the city of Virginia or the town of Gold Hill, shall be vested in Storey county, meaning by the name as now used, the new municipality.

Section 3, that the new municipality shall succeed to all property rights, all books, records, etc., of Storey county, Virginia City or Gold Hill, and shall become subject to all liabilities of those organizations.

Section 4, that Storey county (evidently the municipality) may sue for and recover all property, etc., belonging to either said county, city or town, and that all existing suits, actions and proceedings to which " said county " or the city or town is a party, are to be continued by or against " said county."

Section 7, that all county moneys are to be kept in one fund, to be known as the county general fund.

Section 10, that the board of commissioners may levy a tax for county purposes, not exceeding the sum of $3 50 on each $100 valuation of the property therein.

A comparison of this act with the existing laws governing all the other counties in the state seems to demonstrate that it is in conflict with section 20 of article IV of the constitution, which forbids local and special laws regulating county business; with section 25 of the same article, which requires the legislature to establish a system of county governments which shall be uniform throughout the state.

Clearly, a county is not a municipal corporation. If it were, there would have been no occasion for this act changing Storey county into a municipality. It is, at the most, only a *quasi* corporation, and possesses only such powers and is subjected to only such liabilities as are specially provided for by law. Mr. Beach, in his work on Public Corporations,

states the distinction between them as follows: "Municipal corporations embrace incorporated cities, villages and towns, which are full-fledged corporations, with all the powers, duties and liabilities incident to such a status; while public *quasi* corporations possess only a portion of the powers, duties and liabilities of corporations. As instances of the latter class may be mentioned counties, hundreds, townships, overseers of the poor, town supervisors, school districts and road districts." (Beach Pub. Corp., sec. 3.)

And again, in section 6, the same author says: "The preceding sections indicate the essential differences between the municipal and the public *quasi* corporation. The latter may be defined to be an involuntary political or civil division of the state, created by general laws to aid in the administration of government. * * * Counties, townships, school districts, road districts and like public *quasi* corporations do not usually possess corporate powers under special charters; but they exist under general laws of the state, which apportion the territory of the state into political divisions for convenience of government, and require of the people residing within those divisions the performance of certain public duties as a part of the machinery of the state, and, in order that they may be able to perform these duties, vests them with certain corporate powers."

A county is certainly very far from being the complete corporation that is created by the act in question, with all, and probably more than all, the powers that can be vested in a municipal corporation. This of itself is sufficient to destroy the uniformity that the constitution requires to exist in the several county governments.

In *Singleton* v. *Eureka County*, 22 Nev. 91, we had occasion to consider this clause of the constitution at some length, and there concluded that it meant that such governments must, in all essential particulars, be alike. *State* v. *Boyd*, 19 Nev. 43, is to the same effect. But Storey county, as created into a municipal corporation by this act, is not like the other counties, either in form or substance, and therefore the act is in conflict with the constitution.

With the law in question in force, it would be an interesting study to determine just what position Storey county that

used to be, the city of Virginia and the town of Gold Hill would be in.   While there is no provision for their disestablishment, there can be little doubt that the framers of the law intended that they should practically cease to exist.   If not totally destroyed, it was certainly intended that the breath of life should be taken from them.   All property, all rights of action, all revenues and incomes, all books, records, claims, demands, etc., theretofore belonging to Storey county, are transferred to the new municipality.   Without property, without records, without rights in anything, either in possession or in action, its bones are marrowless, and it has nothing in common with the living organizations in the other counties.

It is no answer to say that the new municipal corporation has taken its place and has all the powers, duties and liabilities that the county formerly had, for it is an entirely different system of government, whereas the constitution requires them to be the same.   Nor is this true merely in matters of form.   The municipality has different and additional powers from those possessed by the counties.   No county has a common seal; nor can it hold property outside its boundaries, or even inside, except for a few purposes, nor purchase, sell or mortgage property generally; nor hold and manage it in trust for any purpose, while the municipality of Storey county is authorized to hold it for all purposes. Other counties must have at least three funds for county purposes: a general fund, an indigent fund and a contingent fund (Gen. Stats., sec. 2008), but this municipality is to have but one; other counties can under no circumstances levy a tax for county purposes of more than $2 upon each $100 of property valuation (Stats. 1895, 22), while the new Storey county can levy $3 50.   In fact, were it not that the municipality has the same name and the same boundaries as Storey county, it would be fully as difficult to point out wherein the two governments are uniform as that wherein they differ.

In addition, as the act is confined to Storey county, it is both local and special, and as it unquestionably regulates the business of that county, it is also invalid for that reason.

Writ refused.