## WASHOE COUNTY WATER CONSERVATION DISTRICT v. BEEMER, County Clerk, Et Al.

No. 3109

May 31, 1935.                45 P. (2d) 779.

*Price & Merrill,* for Petitioner:

*Ernest S. Brown,* District Attorney of Washoe County, and *Nash P. Morgan,* Deputy District Attorney of Washoe County, for Respondent:

## OPINION

By the Court, TABER, J.:

Original proceeding in mandamus.

Petitioner, Washoe County water conservation district, was organized under the Nevada irrigation district act of March 19, 1919, N. C. L. secs. 8008–8097. Its chief purpose was to store and regulate the flood waters of the Truckee river. It is now proposed that $1,000,000 be spent in the acquisition and construction of reservoirs, waterworks, and improvements for upstream storage of the waters of the Truckee river stream system. The money is to be advanced by the United States and repaid, over a long term of years, by petitioner. In order to aid and participate in this project, it is proposed that Washoe County issue bonds in the aggregate amount of $500,000 which is alleged to be a reasonable, proper, and equitable proportion of the cost for said county to bear, by reason of the benefits it will derive from such reservoirs and improvements.

In furtherance of said plan, the legislature passed an act, approved February 28, 1935, authorizing the board of county commissioners of Washoe County to aid in the acquisition and construction of such reservoirs,

waterworks, and improvements by issuing noninterest-bearing bonds of said county, delivering such bonds to petitioner, and levying and collecting taxes for the payment thereof. Statutes of Nevada 1935, p. 22. After reciting the benefits to be derived by Washoe County from said proposed project, said act authorizes said board of county commissioners to issue bonds as aforesaid, but provides that such bonds shall not be delivered to petitioner until it shall have entered into a contract with the United States, an agency of the United States, or other corporation, public or private, for the acquisition and construction of such waterworks and improvements, or for the payment of moneys required to be paid in connection therewith. The act further provides that all moneys collected by or paid to petitioner under said bonds, and all proceeds thereof, shall be used by petitioner for the purposes aforesaid, and for no other purpose. It is further provided that, if within two years after the approval of said act of 1935, said contract with the United States shall not have been entered into nor delivery of said bonds requested by petitioner, the bonds shall be forthwith canceled by the county treasurer. The act next provides that an annual ad valorem tax be levied and collected for the payment and redemption of said bonds; such taxes to be levied and collected in the same manner as general county taxes. By the terms of the act, Washoe County is authorized to enter into contracts with petitioner, or such parties as may by said county or petitioner be deemed advisable, relating to the financial participation of said county in the costs of such work and improvements.

The United States has agreed to advance $1,000,000 to the petitioner for the acquisition and construction of the reservoirs and improvements aforesaid. This money, according to the allegations of the petition, is available to the petitioner only in the event it proceed immediately to enter into a contract with the United States for the repayment of said money. Petitioner further alleges that it cannot safely enter into

such contracts with the United States, unless Washoe County will assume its proportion of the cost of the Truckee river upstream project as provided in said act of 1935.

Pursuant to said act, the county commissioners passed a resolution prescribing the form and date of the proposed bonds, and directing the clerk of the board to cause said bonds to be printed and signed, and to do and perform the other acts and things which he is required to do under said act and said resolution. In March, 1935, petitioner demanded of respondent that he proceed to perform the acts required of him, as aforesaid, whereupon respondent declined so to do, upon the ground that he entertained serious doubts as to the constitutionality of said act of 1935, and as to whether bonds issued thereunder would be valid. Petitioner in this proceeding prays that respondent be commanded to do the things required of him by said act of 1935 and said resolution of the board of county commissioners, as aforesaid.

■ 1. Respondent first attacks the constitutionality of said act of 1935 upon the ground that it violates section 10 of article 8 of the constitution of Nevada. This provision reads as follows: "No county, city, town, or other municipal corporation shall become a stockholder in any joint-stock company, corporation, or association whatever, or loan its credit in aid of any such company, corporation, or association, except railroad corporations, companies, or associations."

We do not find it necessary to decide whether petitioner is a joint stock company, corporation, or association within the meaning of the foregoing provision, because it is not clear that the proposed bond issue would constitute a loan of the credit of Washoe County. Grout v. Kendall, 195 Iowa 467, 192 N. W. 529; Martens v. Brady, 264 Ill. 178, 106 N. E. 266; Kinney v. City of Astoria, 108 Or. 514, 217 P. 840; Veterans' Welfare Board v. Riley, 188 Cal. 607, 206 P. 631; Bush v. Martineau, 174 Ark. 214, 295 S. W. 9; Ruff v. Womack, 174 Ark. 971, 298 S. W. 222.

The legislature, by the act of February 28, 1935, has not authorized Washoe County to become surety for petitioner. The United States, as a part of its national recovery program, is willing to advance the $1,000,000 required for the Truckee river upstream storage project; an enterprise which the legislature, as well as petitioner and the board of county commissioners of Washoe County, believe will bring about much needed benefits, consisting not only in direct material assistance to petitioner, but also in numerous advantages tending directly and very substantially to the public welfare of Washoe County as a whole. Petitioner, naturally, is chiefly interested in the benefits accruing to it from the proposed project, while Washoe County as a whole is primarily interested in the direct benefits which said project will bring to it through prevention of flood damage, the improvement of sanitary conditions, increase of property values, enhancement of scenic beauties, stimulation of tourist travel, improvement of conditions for fish culture, and other advantages. Petitioner, besides assuming a full half of the cost of this project, must also bear its proportion of the taxes which will be assessed and collected for the redemption of the county bonds. The legislature has authorized Washoe County, not to lend or give either its money or its credit, but to bond itself for the purpose of taking advantage of an opportunity to participate in a project which it is believed will redound in full measure to the material and lasting prosperity of said county.

■ Respondent further contends that the act in question violates the due process provisions of the federal and state constitutions, the fourteenth amendment to the constitution of the United States, and section 8 of article 1 of the constitution of Nevada. The only authority cited in support of this position is State v. Churchill County, 43 Nev. 290, 185 P. 459. It is claimed that the purpose of the 1935 act is private, not public; that the taxing of property owners outside the boundaries of the conservation district is for the

benefit of those having irrigable lands within said district; and that this is depriving the former of property without due process of law. But the situation here is very different from that presented in the Churchill County case. It is true that the county bond issue would operate to help petitioner; but it is just as true that the assumption by petitioner of half the cost of the project, in addition to the proportion of county taxes which would have to be paid by owners of irrigable lands within the boundaries of the district, would in turn operate to help the county as a whole. The primary purpose of the proposed bond issue is to enable Washoe County, by cooperating with petitioner and the United States to seize the opportunity to gain for itself lasting benefits of great value; an opportunity which may not again be available, either to petitioner or Washoe County. The act of 1935 is free from the ineffective and unenforceable loaning enterprise which was found to be objectionable by a majority of the members of this court in the Churchill County case. Whenever the United States, in its recovery program, lends money to aid in the carrying out of such enterprises as the Truckee river upstream storage project, it takes an active interest in them at all stages, supervising and inspecting the work, insisting upon compliance with the terms of carefully prepared contracts, and keeping in close touch with the projects at all times; realizing that upon the success of the project depends the full repayment of the government loan. Assurance is thus not wanting that the project in question here would be completed, with inestimable benefit to Washoe County and petitioner, not to mention an appreciable amount of benefit to the whole state; for that which benefits substantially and permanently one portion of the state contributes to the prosperity and well-being of its other portions also.

We are unable to agree with respondent's claim that the purpose of the act of February 28, 1935, is private, not public. In Dayton Mining Co. v. Seawell,

11 Nev. 394, at page 405, the court quotes the following words of Chief Justice Bigelow in Talbot v. Hudson, 16 Gray (Mass.) 417, 423: "It has never been deemed essential that the entire community, or any considerable portion of it, should directly enjoy or participate in an improvement or enterprise, in order to constitute a public use, within the true meaning of these words as used in the constitution. Such an interpretation would greatly narrow and cripple the authority of the legislature, so as to deprive it of the power of exerting a material and beneficial influence on the welfare and prosperity of the state. In a broad and comprehensive view, such as has been heretofore taken of the construction of this clause of the declaration of rights, everything which tends to enlarge the resources, increase the industrial energies, and promote the productive power of any considerable number of the inhabitants of a section of the state, or which leads to the growth of towns and the creation of new sources for the employment of private capital and labor, indirectly contributes to the general welfare and to the prosperity of the whole community."

Even in the Churchill County case, 43 Nev. 290, 185 P. 459, cited by respondent, the court recognized that the tax there in question was for a public purpose.

The article on taxation in 61 C. J. says, at pp. 92, 93: "It is conceded that it is often difficult in practice to determine whether a particular object of taxation is public or private; and it has been said that 'public purpose' is a phrase perhaps incapable of definition, and better elucidated by examples. It has been held, however, that the power of taxation is exerted for a public purpose when the money raised is to be applied: * * * To the development and conservation of water resources for domestic use, irrigation, and light and power."

And see Mott, Due Process of Law (1926), secs. 176, 177, 178.

■■ Respondent next contends that the act of February 28, 1935, is special and local, and that it comes

within two of the subjects or cases enumerated in section 20 of article 4 of the state constitution. He further contends that if said act is not included in any of the enumerated subjects in said section 20, it is none the less void because, under the provisions of section 21, art. 4, a general law not only could be made applicable to the situation covered by said act, but such a general law is actually in effect (Statutes of Nevada 1933, c. 95, pp. 116, 117), and has recently been held to be constitutional. The pertinent part of said section 20 provides that: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * Regulating county and township business; * * * for the assessment and collection of taxes for state, county, and township purposes. * * *" Section 21 of said article 4 reads: "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state." The 1933 act above mentioned provides that whenever the state, or any county, city, or town, school district, or high school district, proposes to issue bonds, the proposal for such bond issue shall be submitted at a general or special election, called for that purpose, to the electors of the state or municipality involved. This act contains other special provisions which it is not necessary to mention here.

It is a general rule, under such provisions as those of sections 20 and 21 of article 4 of the state constitution, that if a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in section 20, such statute is unconstitutional; if the statute be special or local, or both, but does not come within any of the cases enumerated in section 20, then its constitutionality depends upon whether a general law can be made applicable.

Respondent claims that the act of February 28, 1935, is a law for the assessment and collection of taxes for county purposes; also that said act regulates county

business. It seems clear that the act in question is not a law for the assessment and collection of taxes, as those words are used in said section 20. Gibson v. Mason, 5 Nev. 283, 284, at pages 304, 305.

If it be conceded that the act is a special or local law, or both special and local, then we have to consider whether it regulates county business. It will be observed that the constitutional provision (section 20, art. 4) reads, "regulating" county business, not "relating to," "pertaining to," or "concerning" county business. To regulate is (a) to govern or direct according to rule (Webster); (b) to adjust, order, or govern by rule, method, or established mode (Funk & Wagnall); (c) to control, govern, or direct by rule or regulations (Oxford). These are not the only definitions of this word in the dictionaries cited, but they predominate there, as elsewhere, and conform to the etymology of the word. The act of February 28, 1935, does not undertake or attempt to lay down a rule to the effect that in Washoe County proposed bond issues need not, after the passage of the act, be submitted to the electors. It does not seek to amend, revise, or repeal the act of 1933 hereinbefore mentioned. It is rather an act intended to meet a particular and peculiar situation, in the nature of or analogous to, an emergency. The legislature may have believed that quick action was necessary, and that, failing such speedy action, the proposed project might be lost altogether. Or, there may have been other reasons why the legislature decided that a general act would not be applicable in this particular situation. It is difficult to explain the act in any other way, because the legislature certainly knew of the act of 1933; in fact, it is expressly mentioned and referred to in the 1935 act.

In Quilici v. Strosnider, 34 Nev. 9, 115 P. 177, 180, this court, holding constitutional the special act removing the county seat of Lyon County from Dayton to Yerington, said: "The special act of the legislature may be better justified and sustained on the ground that the emergency and conditions were such as to

make prompt action by special act of the legislature necessary in order to prevent undue hardship upon the residents and taxpayers of the county, which under existing conditions would have been caused by delay in proceeding under the general act. Since the burning of the courthouse a long time has been consumed by resisting removal of the county seat under the general law and by waiting for the legislature to act at the instance of the members of the legislature from the county, which has been and is without a proper courthouse or accommodations for conducting county affairs. If the emergency did not justify this special act, much more delay might be expected if further proceedings were brought for the removal under the general act and anticipated resistance made to removal. In the meantime, the county would continue to be without a courthouse or proper accommodations for enforcing criminal laws and conducting litigation and county business; or if the county commissioners proceeded promptly to rebuild or provide a courthouse at Dayton, and by completion an election was reached under the general act and the county seat removed to Yerington, great and unnecessary expense might be entailed upon the taxpayers. As great an emergency may have existed for the passage of this special act as for the one moving the county seat of White Pine County to Ely after the destruction of the courthouse at Hamilton."

See State ex rel. Clarke v. Irwin, 5 Nev. 111; also 59 C. J. 725, where the author says: "Where the constitution so provides, a special, private, or local law cannot be made in any case for which provision has been made by an existing general law, but such provision has no application to a special, private, or local law passed to meet a particular situation with which the existing general law does not adequately deal."

In Evans v. Job, 8 Nev. 322, 333, the court said: "It is evident to our mind that the framers of the constitution recognized the fact that cases would arise in the ordinary course of legislation requiring local or special

laws to be passed, in cases where in their opinion a general law might be applicable to the general subject but not applicable to the particular case. In other words, that a general law could not always be so moulded as to meet the exigencies of every case not enumerated in section 20. Without this right of discrimination the wheels of legislation would often be materially clogged and the wants and necessities of the people liable to be hampered, and the relief to which they were otherwise entitled oftentimes necessarily delayed."

See, also, the following cases in .other jurisdictions: Manigault v. S. M. Ward & Co. (C. C.) 123 F. 707, at page 717; Common Council of Detroit v. Engel, 202 Mich. 544, 168 N. W. 465; Scarbrough v. Wooten, '23 N. M. 616, 170 P. 743; State v. Bowles, 217 Ala. 458, 116 So. 662; 59 C. J. 725, 726.

An act of the 1871 legislature of this state admitted to probate a will which had no attesting witnesses, thus dispensing with this requirement. The public administrator of Ormsby County attacked the constitutionality of this act, claiming, among other things, that besides being special, it came within one of the enumerated subjects in section 20 of article 4 of the state constitution; namely, "regulating the practice of courts of justice." The court in Re Estate of Henry Sticknoth, 7 Nev. 223, 233, held that the act was special, but that it was not included in the said or any other of the enumerated cases in said section 20.

In State ex rel. Clarke v. Irwin, supra, the statute involved was an act creating the county of White Pine and providing for its organization. The court held that the act was both special and local, but that it did not come within the enumerated subject "regulating the election of county and township officers." It was not even claimed, in this case, that the statute regulated county business.

In Quilici v. Strosnider, supra, the court recognized the statute (removing county seat) as being a special law, but held it constitutional, thus showing that it

did not consider the statute one regulating county business, or coming within any of the other enumerated cases in said section 20. The same is true of Gibson v. Mason, supra (act authorizing county bond issue to aid railroad) ; Hess v. Pegg, 7 Nev. 23 (removing county seat) ; Evans v. Job, 8 Nev. 322 (local law removing county seat) ; State ex rel. Rosenstock v. Swift, 11 Nev. 128, 141 (act incorporating Carson City) ; State v. Lytton, 31 Nev. 67, 99 P. 855 (act authorizing county bond issue for new courthouse and jail) ; Russell v. Esmeralda County, 32 Nev. 304, 107 P. 890 (act to regulate fees, Esmeralda County) ; and Dotta v. Hesson, 38 Nev. 1, 143 P. 305 (act authorizing county bond issue for new high school building).

There are other Nevada cases holding, expressly or by implication, that the respective statutes under consideration did regulate county business. Williams v. Bidleman, 7 Nev. 68 (act for the relief of sheriff of Lander County) ; Youngs v. Hall, 9 Nev. 212 (acts creating a fund and providing for redemption of outstanding indebtedness of Esmeralda; note that in this case the court held that these statutes were neither special nor local) ; Odd Fellows Bank v. Quillen, 11 Nev. 109 (act funding the indebtedness of Lincoln County; here also the court held that the act was neither a special nor local law) ; State v. Cal. M. Co., 15 Nev. 234 (act to discontinue litigation touching claims for taxes and penalties) ; Singleton v. Eureka County, 22 Nev. 91, 35 P. 833 (act authorizing sheriff to appoint night watchman) ; Schweiss v. District Court, 23 Nev. 226, 45 P. 289, 34 L. R. A. 602 (act incorporating Storey County) ; Thompson v. Turner, 24 Nev. 292, 53 P. 178 (act providing for payment of indebtedness of Lincoln County; held, however, by implication, not to be either a special or local law) ; Wolf v. County of Humboldt, 32 Nev. 174, 105 P. 286 (act authorizing county commissioners to provide for the imprisonment of certain prisoners in branch jail at Lovelock) ; McDermott v. County Commissioners, 48 Nev. 93, 227 P. 1014 (act for relief of Andrew McDermott).

The cases cited in the foregoing paragraph furnish the basis for a serious claim that the act of February 28, 1935, regulates county business, within the meaning of section 20 of article 4 of the state constitution. When considered together with the cases previously cited, however, the court finds itself unable to say, in a case such as this where it is required to pass upon the validity of an act of the legislative department of the state government, that the said act is clearly within the enumerated subject "regulating county business."

■■ We are accordingly brought to consider whether a general act is or would be applicable. Where there is already a general act such as that of March 20, 1933, hereinbefore mentioned, it is sometimes argued that that fact alone shows that a general act would be applicable; but such is not the law. In Hess v. Pegg, supra, the court said the inference was the other way, and that the very passage of the law raises the presumption that the general act was not and could not be made applicable.

Whether or not a general law is or would be applicable is for this court to decide; but in the absence of a showing to the contrary, the court seldom goes contra to the very strong presumption that the legislature has good reason for determining that a general law is not or would not be applicable in some particular cases. Upon this subject the court in Hess v. Pegg, supra, had this to say: "For this court to oppose its judgment to that of the legislature, excepting in a case admitting of no reasonable doubt, would not only be contrary to all well-considered precedent, but would be an usurpation of legislative functions. It cannot be denied that the tendency in some states of this Union is that way, undoubtedly from good motives; but the sooner the people learn that every act of the legislature not found to be in 'clear, palpable and direct conflict with the written constitution,' must be sustained by the courts, the sooner they will apply the proper correction to unjust or impolitic legislation, if such there be, in the more careful selection of the members of that branch

of the state government to which they have delegated and in which they have vested the 'legislative authority' of this state. No court should, and this court will not, step out of the proper sphere to undo a legislative act; and therein, no court should, and this court will not, declare any statute void because unconstitutional, without clear warrant therefor."

If in the case at bar a clear showing had been made that the passage of the act of February 28, 1935, was a mere trick for the purpose of evading the act of March 20, 1933, or that the legislature's reasons for passing the 1935 act were unsubstantial and purely fanciful, the court would have had a different situation presented for its consideration; but no such showing having been made, and the court being unable, after considering the act of February 28, 1935, and the record in this case, to say that it is clearly satisfied that a general act could be made applicable, it becomes the duty of the court to abide by the presumption that the legislative branch of the state government had a reasonable basis for deciding that a general act would not be applicable, and that it was proper to pass the act of February 28, 1935, in order to meet the particular and peculiar situation with which it was dealing.

■ Respondent contends that the title of the act of February 28, 1935, does not express one subject only, and matters properly connected therewith, and further claims that the title of said act purports to revise or amend the act of March 20, 1933, by reference to its title only; thus violating section 17 of article 4 of the state constitution which provides that: "Each law enacted by the legislature shall embrace but one subject, and matters properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but, in such case, the act as revised, or section as amended, shall be reenacted and published at length." It has already been stated in this opinion that the court does not take the view that the 1935 act amends or revises the 1933 act. The court is further

of the opinion that the title to the 1935 act complies with the provisions of said section 17 of article 4.

The other matters referred to by respondent in his brief are covered by what has already been said in this opinion.

The court finds it impossible to say that the act of February 28, 1935, is beyond a reasonable doubt, unconstitutional, and must therefore decline to hold it so.

The order directing issuance of a peremptory writ of mandamus has heretofore been made and entered, and this opinion is now filed pursuant to stipulation of counsel.