THE CITY OF RENO, a Municipal Corporation, Appellant, *v.* COUNTY OF WASHOE, a Legal Subdivision of the State of Nevada; CITY OF SPARKS, a Municipal Corporation; LEGISLATIVE COMMISSION OF THE STATE OF NEVADA; and WASHOE COUNTY AIRPORT AUTHORITY, Respondents.

No. 10354

June 14, 1978                                            580 P.2d 460

*Robert L. Van Wagoner,* City Attorney, and *Michael V. Roth,* Assistant City Attorney, Reno, for Appellant.

*Larry R. Hicks,* District Attorney, and *Gary D. Armentrout,* Deputy District Attorney, Washoe County; *Paul Freitag,* City Attorney, Sparks; and *Frank W. Daykin,* Legislative Counsel, Carson City, for Respondents.

328

## OPINION

By the Court, MOWBRAY, J.:

The City of Reno has appealed from a declaratory judgment of the district court upholding the constitutionality of the Washoe County Airport Authority Act. We affirm.

## THE FACTS

On May 12, 1977, the Legislature approved the Washoe County Airport Authority Act (hereafter Act), 1977 Nev. Stats. ch. 474 (hereafter Ch. 474), at 968–77, designed to transfer ownership and administration of the airport of the City of Reno (hereafter City) from the City to the Washoe County Airport Authority, created by the Act. Ch. 474, §§ 4, 31, at 969, 976–77.

The City claims that the Act violates the Nevada Constitution in the following particulars: Article 1, section 8, proscribing the taking of property for public use without due process or just compensation; article 1, section 15, forbidding any law impairing the obligation of contracts; and article 4, sections 20 and 21, prohibiting local and special legislation.

## THE ISSUES

1. *The Constitutional Challenge on the Issues of Taking Property without Due Process or Just Compensation and the Impairment of Contracts.*

The City may not challenge the State on the issues of taking property without due process or just compensation and the impairment of its contracts. This court's holding and rationale, as follows, in State ex rel. List v. County of Douglas, 90 Nev. 272, 280–81, 524 P.2d 1271, 1276 (1974), are controlling in the instant case:

> Douglas County, as a political subdivision of the State of Nevada, may not invoke the proscriptions of the Fourteenth Amendment in opposition to the will of its creator. Williams v. Baltimore, 289 U.S. 36 (1933); Trenton v. New Jersey, 262 U.S. 182 (1923). It *may not complain of state action on the ground that it has been deprived of its property without due process of law.* The basic principles were summarized in the case of Hunter v. Pittsburgh, 207 U.S. 161 (1907):
>
> > "It would be unnecessary and unprofitable to analyze these decisions or quote from the opinions rendered. We think the following principles have been established by them and have become settled doctrines of this court, to be acted upon wherever they are applicable. Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and

efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. *The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation.* All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. *The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it.''* Id. at 178–179. (Emphasis added.)

Although this court's ruling in *List* was focused on the fourteenth amendment to the Federal Constitution, we hold that the same reasoning applies to the due process clause of the Nevada Constitution, article 1, section 8.

Similarly, and relying on the High Court's pronouncement in *Hunter,* upon which we predicated our ruling in *List,* we conclude that in the instant case the taking of the City's property for public use does not violate the Nevada Constitution. Nor was the constitutional proscription against the impairment of contractual obligations violated. Nev. Const. art. 1, § 15. The City, created as a governmental agency for administration

by the State, cannot complain that its contracts are impaired, since its contractual rights are derived from the State itself.[1] *See* Alameda County v. Janssen, 106 P.2d 11, 15 (Cal. 1940), where Mr. Justice Traynor, writing for the California Supreme Court, held:

> Such cancellations in no way violate the provisions of the United States and California Constitutions prohibiting the passage of any law impairing the obligation of contracts. These provisions do not prevent the legislature from changing the contractual rights of its political subdivisions acting in a governmental capacity. County of Tulare v. City of Dinuba, 188 Cal. 664, 206 P. 983; City of Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937, 29 A.L.R. 1471; City of Worcester v. Worcester Consol. Street Railway Co., 196 U.S. 539, 25 S.Ct. 237, 49 L.Ed. 591. . . .

And as Mr. Justice Batjer, speaking for this court, said in Koscot Interplanetary, Inc. v. Draney, 90 Nev. 450, 458–59, 530 P.2d 108, 113–14 (1974):

> In Home Bldg. & L. Assn. v. Blaisdell, 290 U.S. 398, 442–444 (1934), the United States Supreme Court reiterated the rule that all contracts are made subject to the paramount authority retained by a state over contracts "to safeguard the vital interest of its people" and went on to say: "[T]he question is no longer merely that of one party to a contract as against another, but of the use of reasonable means to safeguard the economic structure upon which the good of all depends. * * * The principal of this development is, * * * that the reservation of the reasonable exercise of the protective power of the States is read into all contracts. * * *"

We conclude, therefore, that the City, as a political subdivision of the State, may not raise the issues of taking of property without due process of law or just compensation and the impairment of its contracts, as against the State, its creator.

2.   *The Constitutional Challenge on the Issue that the Act Is a Local and Special Law.*

The City also claims that the Act is unconstitutional because it is a local and special law applicable only to the Reno airport and the cities of Reno and Sparks and the County of Washoe. This legislation, the City suggests, violates the Nevada Constitution, article 4, sections 20 and 21.

---

[1] It is noted that any contractual rights of private parties involved in the Act are fully protected by the Act. Ch. 474, § 31, ¶¶ 1 and 2(c), at 976.

These constitutional provisions do apply in the case at hand, and they exist for the protection of political subdivisions of the State. Their effect is to limit the Legislature, in certain instances, to the enactment of general, rather than special or local, laws.

A. *Unconstitutionality of the Act When a General Law Is, or Can Be Made, Applicable.*

Article 4, section 21, of the Nevada Constitution, provides: "In all cases . . . where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

The City first contends that general laws providing for municipal and county ownership and administration of airports (NRS chs. 495, 496) are "applicable", since they cover the general suject matter to which the Act refers and in some instances directly conflict with the provisions of the Act. (*E.g.,* NRS 495.010, subsection 1, and 496.020, subsection 5, authorize acquisition and control of airports by cities, while Ch. 474, section 31, paragraph 3, specifically prohibits the exercise of such powers by the cities of Reno and Sparks.)

This contention is unsound. Any conflict between special and general laws must, if the general law is constitutional, be resolved in favor of the special law. Ronnow v. City of Las Vegas, 57 Nev. 332, 65 P.2d 133 (1937). The existence of a general law covering the basic subject matter does not necessarily establish that such a law is "applicable" for purposes of section 21. Washoe County Water Conserv'n Dist. v. Beemer, 56 Nev. 104, 45 P.2d 779 (1935). As Mr. Justice Hawley observed in Evans v. Job, 8 Nev. 322, 336 (1873):

> If we adopt the views so earnestly contended for by appellant it would be impossible for the legislature to pass any local or special law, because all subjects of legislation are more or less general; and to say that when the subject of the law was general a general law would be applicable would prohibit the legislature from passing any local or special law.

The test of whether a general law is, or can be made, "applicable", for purposes of section 21, has been articulated in various ways. In State ex rel. Clarke v. Irwin, 5 Nev. 111, 122 (1869), this court held:

> A law, to be applicable in the sense in which the words are evidently used, and their only proper sense in such connection, must answer the just purposes of the legislation; that

is, best subserve the interests of the people of the state, or such class or portion as the particular legislation is intended to affect. . . .

Almost 80 years later, the court observed:

This court has repeatedly upheld the constitutionality of special or local acts of the legislature, passed, in some instances, because the general legislation existing was insufficient to meet the peculiar needs of a particular situation, and, in other instances, for the reason that facts and circumstances existed, in relation to a particular situation, amounting to an emergency which required more speedy action and relief than could be had by proceeding under the existing general law. . . .

Cauble v. Beemer, 64 Nev. 77, 96, 177 P.2d 677, 686 (1947).

In this instance, the Legislature has expressly determined that "[b]ecause of special circumstances and conditions a general law cannot be made applicable". Ch. 474, § 2, ¶ 1(g), at 968. The Legislature found that the airport "originally served primarily the city residents", but is "now serving the inhabitants of a large geographical area and ever-increasing numbers of tourists", and therefore has become a "regional airport". Ch. 474, § 2, ¶ 1(a),(b),(c), at 968. The Legislature further determined that "[t]he city of Reno is unable to operate the airport effectively within the traditional framework of local government" and that "[d]evelopment of the modern airport requires the expenditure of vast sums of money . . . not available to the City of Reno". Ch. 474, § 2, ¶ 1(e),(f), at 968. The Act would "allow the tax burden [of the airport] to spread over Washoe County". Ch. 474, § 2, ¶ 1(g), at 968. And, finally, the Act would "accommodate the expanding urban population patterns, provide adequate funding and establish the administrative machinery necessary to insure adequate air service to the region." Ch. 474, § 2, ¶ 1(h), at 968.

Anchoring his ruling on those legislative findings, the district judge, in his written decision, concluded that the Act was constitutional.[2]

We agree. As early as 1869, this court enunciated the rule in State ex rel. Clarke v. Irwin, 5 Nev. 111, 120 (1869):

"The leading rule in regard to the judicial construction of constitutional provisions . . . declares that in cases of

---

[2]Excerpt from district judge's decision: "Affording the legislative finding some weight, the Court finds that the statute in question, Statutes of Nevada 474, 1977, is not unconstitutional for any of the reasons cited by the City of Reno and that the statute be declared constitutional and that the Temporary Injunction should be dissolved." (Footnote omitted.)

doubt every possible presumption and intendment will be made in favor of the constitutionality of the act in question, and that the courts will only interfere in cases of clear and unquestioned violation of the fundamental law. It has been repeatedly said that the presumption is that every state statute, the objects and provisions of which are among the acknowledged powers of legislation, is valid and constitutional, and such presumption is not to be overcome unless the contrary is clearly demonstrated."

. . .

Later, this court, in Western Realty Co. v. City of Reno, 63 Nev. 330, 349-50, 172 P.2d 158, 167 (1946), reiterated:

Municipal administration is especially local in its nature, and local features peculiar to a municipality naturally call for special legislation. . . .

"Special legislation to meet the wants, requirements and special needs of each municipality, rather than general laws *exclusively,* is consonant with the fundamental principles and policy of local self-government and home rule, and in our judgment the true remedy is not absolutely and sweepingly to prohibit such legislation, but to safeguard it from legislative abuse. . . ."

(quoting 1 J. Dillon, Municipal Corporations, § 141, at 256 (5th ed. 1911)) (emphasis in original).

We conclude that the Act does not offend article 4, section 21, of the Nevada Constitution.

B. *The Specific Provisions of Section 20.*

Finally, the City urges that the Act violates article 4, section 20, of the Nevada Constitution, which provides: "The legislature shall not pass local or special laws in any of the following enumerated cases. . . ." Among those cases are the following, which the City suggests apply to the Act: "For the assessment and collection of taxes for state, county and township purposes" and "Regulating county and township business."

i. The City's contention that the Act violates the provision of section 20 prohibiting a special or local law for the assessment and collection of taxes is meritless. Although the Act does grant to the Washoe County Airport Authority the power to levy and collect general taxes, and to fix a rate of levy, subject to the approval of Washoe County (Ch. 474, §§ 12-13, at 971-72), such provisions have been held to encompass only "a different *method* of either assessment or collection than provided by the revenue laws of general application throughout the

state." (Emphasis added.) Cauble v. Beemer, 64 Nev. 77, 87-88, 177 P.2d 677, 682 (1947). The allowance of special statutes for the levy and collection of taxes for particular local purposes has long been upheld. Gibson v. Mason, 5 Nev. 283 (1869); Thompson v. Turner, 24 Nev. 292, 53 P. 178 (1898); State ex rel. Henderson Banking Co. v. Lytton, 31 Nev. 67, 99 P. 855 (1909).

ii. The City also contends that the Act violates the provision of section 20 prohibiting local or special laws "[r]egulating county and township business." We do not agree. It is clear that the City's concern is with legislative intrusion into its own affairs and not with the relatively minor involvement of Washoe County in the facilitation of the Authority's business.[3]

This court has pointed out that the provision of Section 20 prohibits "regulating" county business by special or local law and does not prohibit such a law merely "relating to," "pertaining to," or "concerning" county business. Washoe County Water Conserv'n Dist. v. Beemer, 56 Nev. 104, 117, 45 P.2d 779, 782 (1935). In Cauble v. Beemer, 64 Nev. 77, 90, 91, 177 P.2d 677, 683, 684 (1947), the court observed:

> It is manifest the framers of the constitutional provision prohibiting any local or special act regulating county business had in mind maintaining essential uniformity in the laws enacted to govern county business in general, and its administration. [See, e.g., County of Clark v. City of Las Vegas, 92 Nev. 323, 550 P.2d 779 (1976).] . . . It was not, manifestly, such an act as . . . relates and pertains to, and concerns, only a single item, or project, of county business. . . .

The Washoe County Airport Authority Act does not "regulate" county business within the meaning of this provision of section 20.

For these reasons, we conclude that the Act is constitutional and that the judgment of the district court must be affirmed.

THOMPSON and MANOUKIAN, JJ., concur.

GUNDERSON, J., with whom BATJER, C. J. agrees, dissenting:

---

[3]The City itself, a municipal corporation, is not included in the scope of the prohibition. See Nev. Const. art. 8, § 1; Schweiss v. First Judicial Dist. Court, 23 Nev. 226, 45 P. 289 (1896); and Styring v. City of Santa Ana, 147 P.2d 689 (Cal.App. 1944).

I respectfully dissent.

Although the Washoe County Airport Authority Act interjects Washoe County into the ownership and administration of Reno's airport (a highly substantial business venture), our colleagues say the Act merely "relates to" but does not "regulate" county business. With all respect, my colleague Batjer and I feel this declaration is not explained sufficiently so that it can be understood and accepted. To us, it appears the legislation in question is subject to concerns our Constitution sought to avoid, to-wit: that important local legislation should not be adopted by legislators from elsewhere "without any feeling of responsibility on their part, thus often leading to improper combinations among the members and even to vicious legislation that would not be permitted were it to affect the whole state." McDonald v. Beemer, 67 Nev. 419, 426, 220 P.2d 217, 220 (1950). To us also, it appears henceforth the involvement of other counties in airports elsewhere in Nevada will be different from, and not uniform with, Washoe County's involvement in the business of governing the Reno Airport.